BOARD OF EDUCATION FOR THE CITY OF NEW HAVEN ET AL. *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
(13340)

SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued May 12—decision released July 26, 1988

*Lubbie Harper, Jr.,* for the appellants (plaintiffs).

*Laura S. Shactman,* commission counsel, with whom was *Mitchell W. Pearlman,* general counsel, for the appellee (named defendant).

*Brian J. Casey,* with whom, on the brief, was *Mark R. Kravitz,* for the appellees (defendant The Jackson Newspapers, Inc., et al.).

GLASS, J. The principal issue in this case is whether a party whose request to an agency for information is denied, and the denial is not appealed to the Freedom of Information Commission (FOIC), may thereafter appeal to the FOIC from the denial of a subsequent request to the same agency for the same information.

The essential facts are undisputed and may be summarized as follows. The defendants are John O. Bailey, Richard Conrad, Adrienne Hedgspeth and the Jackson Newspapers, Inc. (collectively referred to as the Jackson Newspapers), and the FOIC. The plaintiffs are the New Haven Board of Education (board) and the New Haven Superintendent of Schools (superintendent). On July 10, 1986, the Jackson Newspapers wrote to the

board requesting access to records in order to inspect or copy the 1986 performance evaluation of the superintendent. The superintendent's office received the request on July 15, 1986. On July 29, 1986, the board informed the Jackson Newspapers that there was no written performance evaluation of the superintendent.[1] On September 30, 1986, the Jackson Newspapers made a second request to inspect or copy the 1986 performance evaluation of the superintendent. The superintendent responded to the request on October 1, 1986, by mailing a copy of the board's July 29 letter to the Jackson Newspapers which stated that there was no written performance evaluation of the superintendent.

The Jackson Newspapers filed a complaint with the FOIC on October 30, 1986. The complaint alleged that the board and the superintendent had violated the Freedom of Information Act (FOIA); General Statutes §§ 1-15, 1-8a, 1-19 through 1-19b, 1-21, 1-21a and 1-21c through 1-21k; by refusing to release the performance evaluation of the superintendent. A FOIC hearing officer heard the complaint on November 24, 1986. At the hearing, the board and the superintendent moved to dismiss the complaint on the ground that the Jackson Newspapers had not filed their notice of appeal within the time limit of General Statutes § 1-21i (b).[2] Specifi-

---

[1] Under General Statutes § 1-21i (a), the fact that the board failed to respond to the request of the Jackson Newspapers within four business days is deemed to be a denial of the request.

General Statutes § 1-21i (a) provides in pertinent part: "DENIAL OF ACCESS TO PUBLIC RECORDS OR MEETINGS. . . . (a) Any denial of the right to inspect or copy records provided for under section 1-19 shall be made to the person requesting such right by the public agency official who has custody or control of the public record, in writing, within four business days of such request. Failure to comply with a request to so inspect or copy such public record within such four business day period shall be deemed to be a denial."

[2] General Statutes § 1-21i (b) provides in pertinent part: "Any person denied the right to inspect or copy records under section 1-19 or wrongfully denied the right to attend any meeting of a public agency or denied

cally, they claimed that the § 1-21i (b) time limit for an appeal to the FOIC, which is thirty days after a denial of a request for information, should have commenced as of July 19, 1986, when the board had failed to respond within four business days of the request, and not on October 1, 1986, the date of the denial of the Jackson Newspapers' second request.[3] The FOIC found that there is no provision in the FOIA which precludes the Jackson Newspapers from renewing their initial request to inspect or copy public records. Consequently, the FOIC found that the Jackson Newspapers had complied with the time requirements for an appeal pursuant to § 1-21i (b) and the motion to dismiss was denied.

At the hearing, the FOIC found that on November 10, 1986, the board had issued a statement concluding that the superintendent's performance for the 1985-1986 year was excellent. Although the evaluation process was an oral one, the board's statement indicated that the board members had used a performance

any other right conferred by sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, may appeal therefrom to the freedom of information commission, by filing a notice of appeal with said commission. A notice of appeal shall be filed within thirty days after such denial, except in the case of an unnoticed or secret meeting, in which case the appeal shall be filed within thirty days after the person filing the appeal receives notice in fact that such meeting was held. For purposes of this subsection, such notice of appeal shall be deemed to be filed on the date it is received by said commission or on the date it is postmarked, if received more than thirty days after the date of the denial from which such appeal is taken. Upon receipt of such notice, the commission shall serve upon all parties, by certified or registered mail, a copy of such notice together with any other notice or order of such commission. Said commission shall, after due notice to the parties, hear and decide the appeal within one year after the filing of the notice of appeal, by confirming the action of the agency or ordering the agency to comply forthwith with such relief as the commission, in its sound discretion, believes appropriate to rectify the denial of any right conferred by said sections."

[3] We note that July 15, 1986, the date the board received the initial request, fell on a Tuesday. Since General Statutes § 1-21i (a) states that failure to comply with a request within four business days is deemed a denial, the board's denial under the statute occurred on Monday, July 21, 1986.

evaluation form in their evaluation of the superintendent. The FOIC further found that on several occasions the board convened in executive session[4] to discuss the performance evaluation. On the basis of the evidence presented, however, the FOIC found that it could not determine whether individual board members had used written forms during the 1986 evaluation of the superintendent. The FOIC nevertheless found that if written performance evaluation forms were used by board members, such forms were public records within the meaning of General Statutes § 1-18a (d), and disclosable under General Statutes §§ 1-15 and 1-19 (a)[5] of the General Statutes.

[4] "[General Statutes] Sec. 1-21g. EXECUTIVE SESSIONS. (a) At an executive session of a public agency, attendance shall be limited to members of said body and persons invited by said body to present testimony or opinion pertinent to matters before said body provided that such persons' attendance shall be limited to the period for which their presence is necessary to present such testimony or opinion and, provided further, that the minutes of such executive session shall disclose all persons who are in attendance except job applicants who attend for the purpose of being interviewed by such agency.

"(b) An executive session may not be convened to receive or discuss oral communications that would otherwise be privileged by the attorney-client relationship if the agency were a nongovernmental entity, unless the executive session is for a purpose explicitly permitted pursuant to subsection (e) of section 1-18a."

[5] General Statutes § 1-18a (d) provides: "DEFINITIONS. As used in this chapter, the following words and phrases shall have the following meanings, except where such terms are used in a context which clearly indicates the contrary . . . .

"(d) 'Public records or files' means any recorded data or information relating to the conduct of the public's business prepared, owned, used, received or retained by a public agency, whether such data or information be handwritten, typed, tape-recorded, printed, photostated, photographed or recorded by any other method."

General Statutes § 1-15 provides: "APPLICATION FOR COPIES OF PUBLIC RECORDS. CERTIFIED COPIES. FEES. Any person applying in writing shall receive, promptly upon request, a plain or certified copy of any public record. The fee for any copy provided in accordance with this section and sections 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall not exceed twenty-five cents per page. If any copy provided in accordance with said sections requires a printout or transcription, or if any person applies

The FOIC also found that the board's minutes of its November 10, 1986 meeting indicated that a nonboard member recorder was present during an executive session held on that date. The FOIC stated, however, that it was unable to determine whether the recorder had any records concerning the performance evaluation of the superintendent. Nevertheless, the FOIC concluded that if the nonboard member had any performance evaluation records, such records were public records within the meaning of § 1-18a (d), and disclosable under §§ 1-15 and 1-19 (a).

for a printout or transcription of a public record, the fee for such printout or transcription shall not exceed the cost thereof to the public agency. A public agency may require the prepayment of any fee required or permitted under this chapter if such fee is estimated to be ten dollars or more. The sales tax provided in chapter 219 shall not be imposed upon any transaction for which a fee is required or permissible under this section or section 1-21c. The public agency shall waive any fee provided for in this section when (1) the person requesting the records is an indigent individual, (2) the records located are determined by the public agency to be exempt from disclosure under subsection (b) of section 1-19, or (3) in its judgment, compliance with the applicant's request benefits the general welfare. Except as otherwise provided by law, the fee for any person who has the custody of any public records or files for certifying any copy of such records or files, or certifying to any fact appearing therefrom, shall be for the first page of such certificate, or copy and certificate, one dollar; and for each additional page, fifty cents. For the purpose of computing such fee, such copy and certificate shall be deemed to be one continuous instrument."

General Statutes § 1-19 (a) provides in pertinent part: "ACCESS TO PUBLIC RECORDS. EXEMPT RECORDS. (a) Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-15. Any agency rule or regulation or part thereof, that conflicts with the provisions of this subsection or diminishes or curtails in any way the rights granted by this subsection shall be void. Each such agency shall keep and maintain all public records in its custody at its regular office or place of business in an accessible place and, if there is no such office or place of business, the public records pertaining to such agency shall be kept in the office of the clerk of the political subdivision in which such public agency is located or of the secretary of the state, as the case may be."

On the basis of its findings, the FOIC issued an order to the board directing it to provide the Jackson Newspapers with affidavits from nontestifying board members and from each nonagency member present at the November 10 executive session, stating whether he or she had any records relating to the superintendent's evaluation. The FOIC further ordered the board to provide the Jackson Newspapers with a copy of any records disclosed by the affidavits. Included in the order were criticisms of the manner in which the board conducted its performance evaluation of the superintendent.[6] The plaintiffs appealed the FOIC's orders to the Superior Court. The trial court dismissed the appeal.

From the judgment rendered in the Superior Court, the plaintiffs appealed to the Appellate Court, claiming the trial court erred in: (1) refusing to reverse or modify the FOIC's finding that the Jackson Newspapers had complied with the statutory time limits of the FOIA where the finding contradicts the plain language of the FOIA and constitutes an abuse of discretion; (2) refusing to reverse or modify the substantive findings and orders of the FOIC where those findings and orders

[6] Order number four issued by the FOIC states: "This case compels the Commission to comment on the respondents' ill-conceived efforts to evade their responsibilities under the Freedom of Information Act and to abrogate their duties as public officials. The respondent board is a public agency accountable not to itself, but to the people of New Haven. One of its most important functions is to evaluate the superintendent of schools, the school system's chief executive officer. By abolishing the written evaluation process, the board leaves the citizens of New Haven without a meaningful assessment of the superintendent's performance for the 1985-86 year and conceals from public scrutiny its decision-making process. The board has acted irresponsibly by eliminating a written performance evaluation record of such a high level public official merely to avoid public oversight. In this case, the board, in effect, has left itself powerless to take any disciplinary action concerning the superintendent's performance as provided by contract. Moreover, the Commission believes that the respondents' fear of the public's reaction to the evaluation process insults the intelligence of the citizens of New Haven and has no place in the representative democracy."

are clearly erroneous in light of the reliable, probative and substantial evidence on the whole record; and (3) refusing to reverse or modify the denunciatory order number four of the FOIC where the order is in excess of statutory authority and is arbitrary and capricious, an abuse of discretion and in violation of the FOIA and General Statutes § 4-177. The appeal was transferred to this court pursuant to Practice Book § 4023. We find error.

## I

The plaintiffs claim that an appeal to the FOIC from an agency denial of an information request must be initiated within thirty days of the notice of the denial. Consequently, they argue that the trial court erred in refusing to reverse or modify the FOIC's finding that the Jackson Newspapers had timely filed their appeal to the FOIC.

This claim implicates General Statutes § 1-21i (b), which provides in pertinent part: "Any person denied the right to inspect or copy records . . . may appeal therefrom to the freedom of information commission, by filing a notice of appeal with said commission. A notice of appeal shall be filed within thirty days after such denial . . . ." The plaintiffs argue that the central question in this appeal is "how many times must a public entity deny a person's request to inspect records before the statutory appeal mechanism of the FOIA is triggered." They assert that, absent evidence presented by the requester indicating error or mistake in the initial denial, a public agency's categorical denial of a request to inspect or copy records initiates the statutory appeal process, and that the Jackson Newspapers' failure to observe the time limits which control the appeal process bars it from pursuing this action. We disagree.

The plaintiffs have not referred to any part of § 1-21i (b) that expressly limits appeals to the FOIC from an agency's denial of a party's first request for information. Indeed, such a restriction would be inconsistent with the general policy of openness expressed in the FOIA legislation. "The Freedom of Information Act expresses a strong legislative policy in favor of the open conduct of government and free public access to government records." *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 328, 435 A.2d 353 (1980).

In support of their claim, the respondents rely on *Zoning Board of Appeals* v. *Freedom of Information Commission,* 198 Conn. 498, 505, 503 A.2d 1161 (1986), where we held that the time limitations prescribed by § 1-21i (b) for the FOIC to hear and decide appeals were mandatory and not directory, and that the FOIC's failure to hear and decide cases within those time limits invalidated any subsequent action by the FOIC. *Zoning Board of Appeals,* however, did not involve the question of whether a party may, in good faith, file with the same agency successive requests for identical public records and thereafter appeal to the FOIC within thirty days from the denial of a particular request.

The language of § 1-21i (b) at issue here is unambiguous. In construing a statute the court is confined to the intention expressed in the words used by the legislature. *Baston* v. *Ricci,* 174 Conn. 522, 528, 391 A.2d 161 (1978). "We have consistently held that if a statute is clear and unambiguous, there is no room for construction. *State* v. *James,* 197 Conn. 358, 363, 497 A.2d 402 (1985); *State* v. *Smith,* 194 Conn. 213, 222, 479 A.2d 814 (1984); *Moscone* v. *Manson,* 185 Conn. 124, 128, 440 A.2d 848 (1981)." *Murray* v. *Lopes,* 205 Conn. 27, 33, 529 A.2d 1302 (1987).

Any person denied the right to inspect or copy public records of an agency may appeal the denial to the FOIC by filing a notice of appeal "within thirty days after such denial." General Statutes § 1-21i (b). The statute does not bar successive requests, nor does it bar successive denials, nor does it require an appeal within thirty days of the denial of any particular request. We decline to engraft a judicial amendment upon the statute that would frustrate the "strong legislative policy in favor of the open conduct of government and free public access to government records." *Wilson* v. *Freedom of Information Commission,* supra, 328. We have reviewed § 1-21i (b), and agree with the FOIC and the trial court that there is no provision in the statute precluding a party from making successive requests to an agency for the same records, where previous requests have been denied, barring him from appealing within thirty days of any denial.

## II

The plaintiffs next claim that the trial court erred in refusing to reverse or modify the substantive findings and orders of the FOIC where those findings and orders are clearly erroneous in light of the reliable, probative and substantial evidence on the whole record. See General Statutes § 4-183 (g) (5).[7] The plaintiffs challenge finding number nineteen, in which the

---

[7] "[General Statutes] Sec. 4-183. APPEAL TO SUPERIOR COURT. . . .

"(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

FOIC concluded that it could not determine whether individual members of the board had used written forms during the 1986 evaluation process, and finding number twenty-two, in which the FOIC concluded that it could not determine whether the recorder had any records concerning the performance evaluation.

" ' "Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, §§ 4-166 through 4-189), and the scope of that review is very restricted. *Lawrence* v. *Kozlowski,* 171 Conn. 705, [707–708,] 372 A.2d 110 (1976) [cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977)]. Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency]." *C & H Enterprises, Inc.* v. *Commissioner of Motor Vehicles,* 176 Conn. 11, 12, 404 A.2d 864 (1978); *DiBenedetto* v. *Commissioner of Motor Vehicles,* 168 Conn. 587, 589, 362 A.2d 840 (1975); see General Statutes § 4-183 (g). "The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." *Burnham* v. *Administrator,* 184 Conn. 317, 322, 439 A.2d 1008 (1981); *Riley* v. *State Employees' Retirement Commission,* 178 Conn. 438, 441, 423 A.2d 87 (1979); see also *Persico* v. *Maher,* 191 Conn. 384, 409, 465 A.2d 308 (1983).' *Buckley* v. *Muzio,* 200 Conn. 1, 3, 509 A.2d 489 (1986)." *New Haven* v. *Freedom of Information Commission,* 205 Conn. 767, 773, 535 A.2d 1297 (1988).

We adhere to our rule that because the FOIC is the factfinder in this case, we decline to appraise and weigh the evidence considered by the FOIC in reaching its determination on the challenged findings. Because of the FOIC's finding that it was unable to determine from the record the existence of disclosable public records

within the meaning of General Statutes §§ 1-18a (d), 1-15 and 1-19 (a), we conclude that there is no basis for the orders that it issued.

Plenary authority has been provided to the FOIC by the legislature to determine whether the board members and the nonboard member recorder had information or documents relevant to the FOIC's inquiry. Under General Statutes § 1-21j (d),[8] the FOIC has authority not only to investigate and hear complaints but also to subpoena witnesses, to have their attendance and testimony compelled, and to require the production for examination of any books or papers the FOIC deems relevant in any matter under investigation. In *Wilson* v. *Freedom of Information Commission,* supra, 340, we stated that where a public agency claims that its records are exempt from disclosure under the FOIA, the FOIC "should not accept an agency's generalized and unsupported allegations relating to documents claimed to be exempt from disclosure." We observed that "[w]here the nature of the documents . . . is in dispute it is not only within the [FOIC's] power to examine the documents themselves, it is contemplated by the [FOIA] that the [FOIC] do so. . . . [The FOIA] anticipates that the [FOIC] will play a central role in resolving disputes administratively under

---

[8] General Statutes § 1-21j (d) provides in pertinent part: "The commission . . . shall have the power to investigate all alleged violations of said sections and may for the purpose of investigating any violtion hold a hearing, administer oaths, examine witnesses, receive oral and documentary evidence, have the power to subpoena witnesses under procedural rules adopted by the commission to compel attendance and to require the production for examination of any books and papers which the commission deems relevant in any matter under investigation or in question. In case of a refusal to comply with any such subpoena or to testify with respect to any matter upon which that person may be lawfully interrogated, the superior court for the judicial district of Hartford-New Britain, on application of the commission, may issue an order requiring such person to comply with such subpoena and to testify; failure to obey any such order of the court may be punished by the court as a contempt thereof."

the [FOIA]. To fulfill this role effectively, the [FOIC's] determinations must be informed." Id., 339–40.

The FOIC has full authority to determine the existence of public records and the propriety of their disclosure. In this case, the FOIC has concluded that it was unable to determine whether any public records exist. Instead of utilizing its authority under § 1-21j (d), the FOIC ordered the board to provide the Jackson Newspapers with affidavits stating whether public records exist, and *if* the affidavits disclose that public records exist, to provide the Jackson Newspapers with a copy of the records. In issuing these orders the FOIC failed to determine whether the board had violated the FOIA by withholding any public records. It was essential that the FOIC find that there had been a violation before it was empowered to issue any final order.

Consistent with our analysis in *Wilson* v. *Freedom of Information Commission,* supra, regarding disputes pertaining to the nature of documents, we hold that where the existence of public records is in dispute, the FOIC's information gathering authority must be pursued as provided in General Statutes § 1-21j (d). Because of the FOIC's indeterminate finding regarding the existence of public records and its orders, the trial court erred in dismissing the plaintiffs' appeal. This disposition renders it unnecessary for us to consider the plaintiffs' claim regarding the denunciatory comments made by the FOIC.

There is error, the judgment is set aside and the case is remanded to the trial court with direction to sustain the plaintiffs' appeal.

In this opinion the other justices concurred.