[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff First Healthcare Corporation appeals the declaratory ruling of the defendant commission on hospitals and health care in which the commission declined to adopt the rulings requested by the plaintiff. The commission acted pursuant to General Statutes § 4-176. The plaintiff's appeal is authorized by § 4-183. The court finds the issues in favor of the defendant commission.
The plaintiff operates a nursing home in New London known as Camelot Nursing Home. In 1990, the plaintiff applied to the department of health services and the defendant commission for permission to expand its business by adding additional beds at Camelot.
Ordinarily, a nursing home seeking to increase its bed space is required to obtain the approval of the commission in accordance with the provisions of §§ 19a-154 and 19a-155. There is presently a moratorium in effect on approvals of such increases. Section 19a-155a, however, provides a limited exemption from the approval requirements of §§ 19a-154 and 19a-155. Section 19a-155a
provides that a nursing home "may, on a one-time basis; increase its licensed bed capacity . . . without being required to request or obtain approval . . . provided that the project (1) shall not require licensure by the department of health services of more than ten additional nursing home beds."
In its letters to the department of health services in 1990 the plaintiff indicated it planned to add six beds immediately, which would not require any construction, and later add four beds when necessary construction had been completed. On September 14, 1990, the plaintiff wrote to the defendant commission and CT Page 5146 indicated its intent to take advantage of the provisions of § 19a-155a. In that letter, the plaintiff stated as follows:
 We have applied to the Department of Health Services for six (6) additional SNF beds, pursuant to the CON waiver, allowing for expansion of up to ten (10) beds. . . .
 Additionally, we may add four additional beds in the near future. . . .
 An application for four (4) additional beds may occur within the next few months, depending on the availability of capital funds . . . Implementation of those beds will be approximately September, 1991.
The commission responded to the plaintiff's letter on October 2, 1990, stating that it found the request to be in compliance with § 19a-155a and that "it will not be necessary for you to obtain further permission from the Commission . . . to add six (6) nursing home beds."
Following receipt of the commission's letter, the plaintiff obtained a license from the department of health services to add the six new beds.
In July 1991, the plaintiff again wrote the commission and requested exemption from the approval process for the four additional beds, referring to the 1990 correspondence. The commission responded by denying the exemption, stating that the exemption was available only on "a one-time basis" and that the plaintiff had used it for the six beds the previous year.
Thereafter, the plaintiff filed a petition for a declaratory ruling. In the petition, the plaintiff requested the commission to rule either (1) that § 19a-155a
permits nursing homes, without commission approval, to construct and license some of the ten allowable beds at one time and then, at a later time, construct and license the remaining beds; or (2) that, on the particular facts of this case, the plaintiff did seek to add ten beds on a "one-time basis." The commission CT Page 5147 declined to adopt either of the plaintiff's requested rulings, holding instead that the statute does not afford an exemption for additional beds after a nursing home has claimed an exemption and licensed some beds at an earlier time. The commission further held that the plaintiff's request for the additional four beds was entirely separate from its original request for six beds and was not exempt from the formal approval process required by §§ 19a-154 and 19a-155. It is these rulings that the plaintiff appeals.
There is no dispute regarding the facts set forth above. As the parties make clear in their briefs, the dispute in this case first centers on the interpretation of General Statutes § 19a-155a. The plaintiff argues that the phrase "on a one-time basis" simply clarifies the ten-bed limitation and eliminates the possibility that an applicant could take advantage of the statute in separate projects with a total of more than ten beds. The commission contends, in opposition, that the phrase limits a nursing home to one application for an exemption from the approval process, even if the application is for fewer than the maximum of ten beds.
"Although the construction and interpretation of a statute is a question of law for the courts to decide . . . it is a well established practice of (the) court to accord great deference to the construction given (a) statute by the agency charged with its enforcement."Starr v. Commissioner of Environmental Protection,226 Conn. 358, 372 (1993). It is undisputed that the commission is responsible for enforcing § 19a-155a. The court is required, therefore, to accord great deference to the commission's interpretation of that statute. This does not mean that the court must abdicate its adjudicative function in interpreting the law, but it does mean that where there are different but equally plausible interpretations of a statute the court must give due deference to that followed by the commission.Starr v. Commissioner, supra 376.
The commission's interpretation of the statute means that a nursing home is limited to one application for an exemption from the statutory approval process, even if the total number of beds to be added pursuant to that CT Page 5148 application and subsequent applications would be fewer than the maximum of ten. The commission reads "on a one-time basis" to mean "once" and cites dictionary definitions in support. More significantly, the commission points to administrative impracticalities that would flow from the interpretation urged by the plaintiff. The commission also cites a prior case where it permitted an amendment to an application for an exemption prior to the applicant's licensure by the department of health services. Wadsworth Glen Health CareCenter, Report No. 89-M4, cited in the commission's final decision. The commission argues that this was consistent with its action in this case, where permission was effectively denied because the plaintiff did not seek to amend until after the initial six beds had been licensed.
In accordance with the deference principle set forth above, the court concludes that it must defer to the commission's interpretation of General Statutes § 19a-155a
and specifically the phrase "on a one-time basis." The phrase is an example of the careless use of a colloquialism in statutory drafting, which inevitably engendered conflict over its meaning. The plaintiff's interpretation is plausible and would not seem to lead to any harmful consequences. The commission's interpretation, however, is also plausible under ordinary rules of statutory construction, cited in its brief, and is, at least, not inconsistent with any previous rulings on the subject. Furthermore, the commission's interpretation, although unfavorable to the plaintiff in this case, is not inherently unreasonable. The legislature could well have intended to limit a nursing home to one request for exemption from the approval process and to have signalled its intent by the phrase in question.
The commission's second ruling was based on its conclusion that the plaintiff's various letters to the department of health services and the commission amounted to two separate applications for exemptions from the statutory approval process. In particular, the commission construed the plaintiff's letter of September 14, 1990, to be an application for a six bed addition, not for a ten bed addition. CT Page 5149
"Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, 4-166 through4-189), and the scope of that review is very restricted . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency] . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations and internal quotations marks omitted.) Board of Education v. Freedomof information Commission, 208 Conn. 442, 452 (1988).
The court has examined the record in this case, particularly the correspondence between the plaintiff and the commission. As indicated, the commission concluded that the plaintiff initially applied for an exemption only for the six beds that it was then in a position to add. This conclusion is clearly supported by the text of the plaintiff's letter. Furthermore, the commission immediately notified the plaintiff that it viewed the request as relating only to the six beds, and, although armed with that information, the plaintiff never amended or corrected the request prior to going ahead with the licensure procedure. Under these circumstances, the court cannot say that the commission's factual conclusions were unsupported by the evidence or otherwise arbitrary or unreasonable.
For all of the reasons set forth above, the commission's declaratory ruling is affirmed. The plaintiff's appeal is dismissed.
MALONEY, J.