[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff City of Norwich appeals a decision of the state occupational safety and health review commission, defendant, imposing civil penalties for violations of the Connecticut Occupational Safety and Health Act, General Statutes § 31-367
et seq. The appeal is authorized by General Statutes §§ 31-378 and 4-183. The court finds the issues in favor of the defendants.
On December 26, 1991, employees of the plaintiff City of Norwich were repairing a local gas distribution main on Main Street in that city. Since the main was underground, this work required excavating and working in a trench at the location of the main. On that date, an inspector for the defendant state department of labor made an inspection of the worksite, pursuant to § 31-374, to determine compliance with federal and state safety standards. Following that inspection, the commissioner of labor issued citations and assessed penalties against the city based on four violations of state occupational safety regulations that the commissioner found to be wilful. The violations were: Item (1) that the city failed to provide a ladder in the excavation; Item (2) that the city failed to keep excavated soil and equipment at least two feet from the edge of the excavation; Item (3) that the city failed to inspect the excavation to determine the soil classification; and Item (4) that the city failed to provide an adequate system to protect the workers against cave-ins. The proposed penalties, based on the finding that the violations were wilful, amounted to $26,000. In assessing the penalties, the commissioner of labor acted pursuant to §§ 31-377 and 31-382.
The city duly notified the defendant commission of its intention to contest the citations and penalties, and the CT Page 10856 commission held a hearing pursuant to § 31-377(c). In accordance with that statute, the hearing was de novo and consumed four days over a period from August 1992 to July 1993. Both parties, the city and the commissioner of labor, were given the opportunity to present evidence, cross examine witnesses, and present legal arguments.
Following the hearing, the commission rendered its final decision. Although there was little or no dispute that violations of the state regulations had occurred, a critical issue was whether they were "wilful," as proscribed by subsection (a) of § 31-382, or "serious," as proscribed by subsection (b). The penalty for a wilful violation is up to $10,000; the penalty for a serious violation is up to $1,000.
The commission held that it is appropriate to look to federal case law in interpreting the state occupational safety and health laws and regulations, citing School Administrators Association v.Dow, 200 Conn. 376, 381 (1986). The commission defined a wilful violation as "an act done voluntarily with either intentional disregard of, or plain indifference to, the Act's requirements," citing A. Schonbek Co. Inc v. Donovan, 646 F.2d 799, 800 (2nd Cir. 1981) and other federal cases in support of that definition. Mere knowledge of the requirements of the regulations coupled with a violation may constitute negligence but does not constitute wilfulness, the commission held, citing Secretary ofLabor v. Stone and Webster Engineering Corp., 8BNA OSHC 1753, 1757 July 18, 1980). The commission further held, however, that it is not necessary to prove a malicious intent to violate the safety standards, citing United States v. Dye Construction Co.,510 F.2d 78 (10th Cir. 1975).
Based on its interpretation of the provisions of § 31-382, as summarized above, the commission determined that Items (1), (2) and (3) of the violations cited by the commissioner of labor were "serious" but not "wilful" as those terms are used in the statute. The commission determined that Item (4) of the violations, relating to the lack of cave-in precautions, was "wilful." The factual basis of the commission's determination with repect [respect] to Item (4) was its finding that the city did not utilize a "trench box" in the excavation because the one it had did not fit. This fact led the commission to the conclusion that the failure to provide the required protection was "a deliberate, intentional, voluntary and knowing violation of the requirements of the act and (an) awareness of a condition or practice in CT Page 10857 violation of those requirements." With respect to the other items, the commission found that they were "inadvertent, accidental or negligent" but not wilful.
The city attacks the commission's decision on two fronts: (1) that the commission lacked jurisdiction over the working conditions of the city's employees while they were in the process of repairing a gas line; and (2) that there was insufficient evidence to support the commission's determination of wilfulness with respect to Item (4).
The plaintiff's argument concerning the commission's jurisdiction is based on General Statutes § 31-369(a), which provides in relevant part as follows:
 This chapter applies to all employers, employees and places of government in the state except the following: . . . (2) working conditions of employees over which federal agencies . . . exercise statutory authority to prescribe or enforce standards and regulations affecting occupational safety and health.
It is undisputed that federal statutes provide that the United States Department of Transportation may prescribe and enforce standards and regulations concerning "the design, installation, inspection, emergency plans and procedures testing, construction, extension, operation, replacement and maintenance of (gas) pipeline facilities." 49 U.S.C. § 1672. The federal agency has promulgated regulations governing pipeline facilities.49 C.F.R. Part 92.
The city does not contend that the federal regulations establish safety standards covering the precise hazards found to be present in this case. The city argues, rather, that the federal government's regulatory power extends to every aspect of the pipe repair job, including the ancillary work of excavating the trench to get at the underground pipes. The existence of that regulatory power means, the city argues, that the state regulations do not apply even if the federal agency has not promulgated regulations concerning these precise hazards.
There are no Connecticut appellate court decisions clarifying the jurisdictional boundary lines at issue in this case. The federal occupational safety and health statutes, however, contain CT Page 10858 a parallel provision aimed at preventing duplicative regulation. See 29 U.S.C. § 653(b)(1). Both parties have cited federal case law to support their respective positions, and the commission relied on federal cases in denying the plaintiff's motion to dismiss the administrative procedings [proceedings]. The commission based its decision on this issue on Columbia Gasof Pennsylvania, Inc. v. Marshall, 636 F.2d 913 (3rd Cir. 1980) and Southern Railway Company v. OSHA, 539 F.2d 335 (4th Cir. 1976). See also Southern Pacific Transportation Co. v. Usery,539 F.2d 386 (5th Cir. 1976, cert. denied, 434 U.S. 874 (1977), cited by the defendant state commissioner of labor. These cases, read together, require that, in order to preempt state enforcement, federal regulations must address the same hazards as those addressed by the state regulations. Since the federal regulations do not address the hazards found to be present in this case, those associated with the trench construction, the commission held that the state enforcement was viable.
Certain basic principles of administrative law are pertinent to this issue. "Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, 4-166 through 4-189), and the scope of that review is very restricted . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency]. Board of Education v.Freedom of Information Commission, 208 Conn. 442, 452 (1988).
"Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Conn. Light Power Co. v. Dept. of Public UtilityControl, 219 Conn. 51, 57 — 58 (1991).
Since the precise issue before the court is the correct interpretation of a state statute, General Statutes § 31-369(a)(2), the court must also pay due regard to the interpretation given that statute by the administrative agencies responsible for enforcing it. "Although the construction and interpretation of a statute is a question of law for the courts to decide . . . it is a well established practice of (the) court to accord great deference to the construction given (a) statute by the agency charged with its enforcement." Starr v.Commissioner of Environmental Protection, 226 Conn. 358, 372
(1993). The defendant commission and the defendant commissioner CT Page 10859 of labor are responsible for enforcing the Connecticut Safety and Health Act, including § 31-369. This court is required, therefore, to accord great deference to the interpretation of that statute by these defendants. This does not mean that the court must abdicate its adjudicative function in interpreting the law, but it does mean that where there are different but equally plausible interpretations of a statute, the court must give due deference to that followed by the administrative agencies concerned. Starr v. Commissioner, supra 376.
During the administrative hearing in this case, the city moved to dismiss on the basis of federal preemption. The court has reviewed the commission's thorough and well reasoned decision on that motion and concludes that it is entitled to great deference. In that decision, the commission noted that the working conditions at the excavation site were subject to two different sets of hazards. There were the hazards associated with a gas pipeline, escaping fumes for example; and there were the hazards associated with the excavation of a trench, cave-ins for example. Although the federal agency may arguably have authority to regulate trench construction, it has not done so. Therefore, the commission noted, if it held that the state regulations, which do cover trench construction, were preempted in this case, the workers would not have the protection of any governmental regulation. The commission reasoned that such a broad interpretation of the preemption statute would frustrate the overall purpose of federal and state legislation, which is to provide maximum protection to the workers at the site. Therefore, the commission held, § 31-369 does not bar the state's enforcement of its trench construction safety regulations.
For all of the reasons set forth above, this court affirms the commission's ruling and holds that § 31-369 does not bar the defendants from enforcing safety regulations relative to the trench construction and imposing sanctions against the plaintiff city for violations of those regulations.
The second basis of the city's appeal is its contention that the factual basis for the commission's finding of wilfulness was inadequate. As indicated, the commission found that the city deliberately did not utilize a "trench box" as a safety device because the one that it had would not fit in the excavation. The city points out that it had never previously received a citation for such a violation and, further, that it had in fact taken some CT Page 10860 safety measures to prevent a cave-in at the site in question.
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183(f) provides that "(t)he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." "If the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding . . . the decision must be upheld." Conn. Building Wrecking Co. v.Carrothers, 218 Conn. 580, 601 (1991). "An administrative finding is supported by `substantial evidence' if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. Such a standard of review allows less room for judicial scrutiny than does the `weight of the evidence' rule or the `clearly erroneous' rule." (Citations and internal quotation marks omitted). Briggs v. State EmployeesRetirement Commission, 210 Conn. 214, 217 (1989).
In the present case, the commission had evidence that amply supported its finding that the city failed to provide adequate protection to its workers against cave-ins. The commission determined that the measures that the city did take, partial sloping and benching along one wall of the excavation, were not adequate. Furthermore, it had evidence that the city knew that other measures, such as the installation of a trench box, would be more effective but it deliberately chose not to utilize them. The totality of this evidence was sufficient to support the commission's judgment that the city's failure was not simply negligent but was wilful, as that term is used in § 31-382. Accordingly, the court cannot disturb that judgment.
For all of the reasons set forth above, the appeal is dismissed.
MALONEY, J.