[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, New Hampshire Insurance Company (New Hampshire) and The Connecticut Automobile Insurance Assigned Risk Plan (the Plan), appeal a decision of the defendant commissioner of insurance reversing the decision of the Governing Committee of the Plan and ruling that New Hampshire and the Plan improperly calculated the premium charged to defendant Dial-A-Ride, Inc. (Dial). The court finds the issues in favor of the defendants.
The facts essential to the court's decision are CT Page 4045 undisputed and fully reflected in the record. Dial is the owner of eighteen certificates issued by the Greater Hartford Transit District allowing it to operate taxicabs in Manchester and South Windsor. On August 21, 1987, Dial entered into an agreement with an individual, Marco Henry, whereby Henry "leased" the certificates from Dial and operated his own independent taxi service. The agreement between Dial and Henry provided
 By this agreement Dial-A-Ride and Henry acknowledge and agree that there does not exist between them the relationship of employer-employee, principal-agent, partner or joint-venturer, either expressed or implied, Henry being free from interference or control on the part of Dial-A-Ride in the operation of said taxicab business.
Henry owned the vehicles used in the business and exercised full control over the day-to-day operations. He assumed all the costs and expenses of the taxi business. Because the department of motor vehicles will only register a vehicle as a taxicab to a certificate holder, the agreement provided that "[t]itle to the taxicabs shall be in Henry's name and shall be registered to Dial-A-Ride." Somehow, Dial was able to obtain taxi registrations for the vehicles from the department of motor vehicles even though it did not hold title to the vehicles.
Henry paid for the liability insurance on the taxicabs, which was issued by Travelers Insurance Company, and dealt with the insurer on claims. Dial was the named insured on the policy, however. This anomaly came about as a result of the determination of the insurance agent that it would be more appropriate to name Dial as the insured because it owned the taxi certificates and registered the vehicles.
Dial terminated the agreement with Henry in March 1992 after Henry failed to make required payments to Dial and failed to file necessary documentation with the Greater Hartford Transit District, the authority empowered to issue and revoke taxi certificates. Upon the termination of the operating agreement, Dial took CT Page 4046 over the taxicab business.
In May 1992, Dial applied for insurance coverage through the Connecticut Automobile Insurance Assigned Risk Plan and was assigned to New Hampshire for coverage. The Plan is a residual market mechanism established and approved by the commissioner to provide insurance to applicants who, because of their undesirability as risks, find it difficult or impossible to obtain coverage otherwise. See General Statutes § 38a-329. New Hampshire is a servicing carrier for the Plan. The Plan provides for an insured's premiums to be modified based upon the insured's prior loss experience.
An experience rated premium under the Plan has two components, a base rate and the loss experience of the particular insured. The base rate is determined by the past history of all available claims for the particular type of risk, i.e., livery service. The prior loss experience of a particular insured is translated by formula to a numerical factor, which is then multiplied by the base rate to determine the actual premium rate for the particular insured.
After issuing a policy to Dial, New Hampshire received information from Travelers regarding its loss experience under the policy it had issued to Dial, which was in force during the operating agreement with Henry. New Hampshire thereupon calculated a modification factor of 1.86, based on the Travelers' experience, thereby almost doubling the premium rate that Dial would be charged under the New Hampshire policy. New Hampshire informed Dial of its decision to charge the increased premium in December 1992.
Dial appealed New Hampshire's decision to the Governing Committee of the Plan, which hears and adjudicates complaints concerning the Plan. The Governing Committee ruled that New Hampshire correctly determined Dial's premium.
Dial appealed the Governing Committee's decision to the commissioner pursuant to General Statutes § 38a-329. After a remand by this court and a second hearing, the commissioner reversed the decision of the Governing CT Page 4047 Committee and ruled that New Hampshire and the Plan improperly calculated the premium rate for Dial. In his decision, the commissioner found the facts summarized above and concluded as follows:
 The emphasis of both the Plan and New Hampshire as to who was the "named insured" is misplaced. It seems clear that Marco Henry d/b/a Diamond Cab was the real insured and was considered such by Dial, Henry/Diamond and the insurance agent, Cummings. In light of the manner of premium payment and claims submission there is no evidence that the insurer was unaware of this reality, as well. The evidence presented is conclusive that it was Henry who paid for the insurance, who submitted changes to coverage, who received declarations pages, and who submitted claims for his taxi cab operation. The only connection to Dial was that the name was retained as the named insured because as permit holder it was necessary in order to register the vehicles. The Henry operation was the "risk," separate and distinct from that of Dial.
The commissioner held, therefore, that New Hampshire could not use the loss experience incurred during the Travelers/Henry era in calculating the experience modification factor for the future premiums that Dial would pay New Hampshire for its policy. It is this decision that the plaintiffs appeal.
The basis of the plaintiffs' appeal is their contention that the commissioner misinterpreted the applicable statute and Plan provisions in concluding that Dial could not be charged for the poor loss experience under its policy with Travelers. The plaintiffs cite General Statutes § 38a-686(b)(1) and Plan Rule 20 in support of their argument.
General Statutes § 38a-686 establishes standards, methods and criteria for constructing premium rates for personal risk insurance such as that which is the subject of this case. In the context of this appeal, subsection CT Page 4048 (b)(1) provides that in determining whether a Plan rate is excessive, "Consideration may be given, to the extent possible, to past and prospective loss experience within and outside this state. . . ."
Plan Rule 20, establishes the procedure that an insurance company may follow in calculating the experience modification factor for an applicant. Pertinent provisions cited by the plaintiffs provide as follows:
 A. Eligibility — The term "risk" as used in this Plan means the exposures of any one insured which are to be rated. Allied or subsidiary interest shall not be included unless the insured holds a majority financial interest therein.
 C. Experience Used — The experience modification shall be determined from experience incurred by all companies for the Connecticut operation of the risk. . . The experience period shall be the latest available three year experience. In the event the experience for the experience period is not available, at least one completed policy year shall be used.
The plaintiffs point out that Dial was the only named "insured" under the Travelers' policies, and all of the claims made under those policies were made against Dial and paid in its behalf by Travelers. The plaintiffs contend that General Statutes § 38a-686(b)(1) and Plan Rule 20 specifically authorize New Hampshire to consider the prior loss experience of the "insured," which was Dial under the policies in question.
The plaintiffs further contend that the commissioner's ruling has the potential of undermining the entire concept of experience rating. They argue that an insured could escape the cost of poor loss experience by the simple stratagem followed by Dial in its agreement with Henry of farming out the operation of the business, terminating the agreement after one year, and then entering an agreement with a new untainted contractor. CT Page 4049
Certain general principles of administrative law are particularly applicable to this case. First, it is well settled that the court's role in reviewing the action of an administrative agency is limited. "Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, 4-166 through 4-189), and the scope of that review is very restricted. . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency]. . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations and internal quotations marks omitted.) Boardof Education v. Freedom of Information Commission,208 Conn. 442, 452 (1988).
The court is further limited when the issue concerns the interpretation of statutes and regulations within the agency's area of responsibility. "Although the construction and interpretation of a statute is a question of law for the courts to decide . . . it is a well established practice of (the) court to accord great deference to the construction given (a) statute by the agency charged with its enforcement." Starr v.Commissioner of Environmental Protection, 226 Conn. 358,372 (1993). "This principle applies with even greater force to an agency's interpretation of its own duly adopted regulations." Griffin Hospital v. Commission onHospitals and Health Care, 200 Conn. 489, 497 (1986). The commissioner is responsible for enforcing the statutes and the Plan provisions in question. This court is required, therefore, to accord great deference to the interpretation of those statutes and provisions given by him. This does not mean that the court must abdicate its adjudicative function in interpreting the law, but it does mean that where there are different but equally plausible interpretations of such provisions, the court must give due deference to that followed by the administrative agency concerned. Starr v. Commissioner, supra 376.
In the present case, the commissioner made findings and conclusions based on evidence adduced in two CT Page 4050 hearings, where all parties appeared and participated. These findings and conclusions are summarized above. Most of them are not seriously disputed; all of them are supported by substantial evidence in the record.
Given the findings and conclusions reached by the commissioner, which the court will not disturb, the court cannot say that his ultimate decision was illegal, unreasonable or an abuse of discretion. In essence, the commissioner decided that the applicable statutes and Plan provisions focus the experience rating on the person or entity having clear and direct responsibility for the losses that were incurred under the prior policy, as distinct from the person or entity who was named as the insured under that policy. In this case it was the Henry operation, not the Dial connection, that incurred the losses. It was not unreasonable, therefore, for the commissioner to rule that the new Dial premium rate should not be tainted by the Henry experience.
The plaintiffs' argument that the commissioner's ruling opens the door to fast dealing by companies that operate through a succession of alter egos is compelling only on the surface. The statutes and Plan provisions are so nebulous in the context of such a fact pattern that they virtually require a case-by-case analysis. In this case, it would have been unreasonable to saddle Dial in the future with the effects of the past Travelers/Henry experience. In another case, perhaps one where a pattern of evasion by the insured is shown, the commissioner could very well reasonably rule the other way.
The plaintiffs' appeal is dismissed.
MALONEY, J.