[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed October 8, 1996 CT Page 6287
Plaintiff J.D.C. Enterprises, Inc. appeals the decision of the defendant department of public utility control denying its petition for relief under General Statutes § 16-20 and holding the plaintiff financially liable for electric service provided by defendant The Connecticut Light Power Company. The plaintiff appeals pursuant to § 4-183. The court finds the issues in favor of the defendants.
The facts essential to the court's decision are not in dispute and are fully reflected in the record. Until November 6, 1989, the defendant CLP provided electric service to its customer, Anthony Nigro, at his commercial premises at 48 East Dudley Town Road, Bloomfield. On that date, it discontinued service to Nigro at his request. Nigro moved out.
CLP disconnected active service to the premises and placed the service on an "Occupant" status, indicating that there is no customer at the premises. It continued to read the meter, which registered zero consumption as expected.
In June 1990, the plaintiff purchased and began occupancy of the premises. On or before that date, someone, unbeknownst to CLP, turned on the electric service to the premises, which could be done at the site without special equipment. The plaintiff, without notifying CLP or otherwise requesting service, began to use the electric service.
Although the plaintiff continuously used the electric service, CLP was unaware of the fact until December 1993. At that time, the company discovered that the plaintiff was occupying the premises and had been using the service. The company also discovered the reason why the plaintiff's consumption of electricity had gone unrecorded for so long even though it was periodically reading the meter: the meter was broken.
CLP did not contemporaneously bill the plaintiff for the electric service that it consumed from June 1990 to December 1993 because it was not aware of the plaintiff's existence during that period. And, as might be guessed, the plaintiff never paid anything during the period for the service it was receiving.
After all of the above circumstances came to light, the plaintiff and CLP reached an agreement that the correct net CT Page 6288 charge for the electric service consumed by the plaintiff during the period in question is $13,000. The plaintiff refused to pay that charge, however, claiming exemption under General Statutes § 16-259a. CLP threatened to shut off service. The plaintiff filed complaint with the department pursuant to § 16-20.
The department conducted a hearing at which the plaintiff and CLP appeared and presented testimony and other evidence. Following the hearing, the department rendered a final decision finding the facts summarized above and concluding that the plaintiff is liable for the electricity it consumed in the amount of $13,000.
The sole issue before the department and presented to this court on appeal is whether General Statutes § 16-259a
insulates the plaintiff from liability for electricity it admittedly took from CLP. The department held that the statute afforded no protection to the plaintiff. In relevant part, the statute provides as follows:
 (a) No electric (company) . . . which inaccurately bills a retail customer for service may bill or otherwise hold the customer financially liable for more than six months or three billing periods, whichever is longer, after the customer receives such service, unless the customer . . . by an affirmative act, is responsible for the inaccurate billing. . .
In its decision, the department succinctly stated its reasoning as follows:
 JDC attempts to place the blame for this matter with CLP stating that if CLP had been properly testing its meters that the defective meter would have been discovered and "a proper and timely investigation would have resulted in the discovery of JDC as the owner and occupant of the Premises and a proper bill would have been sent." . . . In fact, had JDC notified the utility that it was taking electric service in June 1990, the defective meter would have been discovered, no investigation would have been necessary, proper bills would have been sent to JDC and this proceeding would not have been necessary. Section 16-259a was never intended to shield electricity users that do not revealCT Page 6289 themselves from saving for services received. (Emphasis added.)
The essence of the department's reasoning, as it states in its brief to the court in this appeal, is that the plaintiff was not a "customer" of CLP during the period in question and whatever the electric company was doing or not doing during that time, it was not "inaccurately bill(ing)" the plaintiff, as those terms are used in the statute.
"Although the construction and interpretation of a statute is a question of law for the courts to decide . . . it is a well established practice of (the) court to accord great deference to the construction given (a) statute by the agency charged with its enforcement." Starr v. Commissioner of Environmental Protection,226 Conn. 358, 372 (1993). It is undisputed that the department is responsible for enforcing the statute in question. This court is required, therefore, to accord great deference to the department's interpretation of that statute. This does not mean that the court must abdicate its adjudicative function in interpreting the law, but it does mean that where there are different but equally plausible interpretations of the statute, the court must give due deference to that followed by the department. Starr v. Commissioner, supra 376.
In the court's view, the department's interpretation of General Statutes § 16-259a(a), in the context of the undisputed facts of this case, is completely reasonable. The interpretation is that an unauthorized and undetected user of electric service must pay for that service when the consumption is ultimately discovered and proved. In such a case, the user is not harmed, paying only for what was in fact consumed. On the other hand, if the statute were held to protect such a user, as the plaintiff urges, the user would be needlessly and unjustly enriched. Furthermore, there is no free lunch: If the user in a case such as this does not pay for the service he consumed, someone else, people who are customers of record or shareholders — innocents, that is — will end up paying for it. It is not reasonable to suppose that the legislature would have intended such an inherently unjust result.
"Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act . . . and the scope of that review is very restricted . . . Neither this court nor the trial court may retry the case or substitute its CT Page 6290 own judgment for that of the [administrative agency] . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations and internal quotations marks omitted.) Board of Education v. Freedomof Information Commission, 208 Conn. 442, 452 (1988). As indicated, the department's decision in this case, in the light of the undisputed evidence, was not unreasonable, arbitrary or in abuse of its discretion.
The appeal is dismissed.
MALONEY, J.