[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION CONCERNING ADMINISTRATIVE APPEAL
The Plaintiff, Jose C., is the biological father of three minor children[1], and was the respondent in prior neglect proceedings wherein the Superior Court for Juvenile Matters committed the care and custody of each child to the Department of Children and Families (DCF). CT Page 883
The Plaintiff initiated this administrative appeal, challenging the ruling of a DCF hearing officer which approved a DCF treatment plan that stopped his visitation with the children. The hearing on this treatment plan was held by DCF on April 3, 1998 at the Osborne Correctional Institution in Somers, where Jose C. is an inmate.
Following this hearing, DCF adjudicator Louis Romano issued a final decision under date of April 13, 1998. In his ruling, the hearing officer approved DCF's treatment plan for the children, and concurred with the agency that further visitation with Jose C. was adverse to the children's best interests. The Plaintiff appeals from that decision, pursuant to the provisions of C.G.S.4-183. The parties to this administrative appeal have submitted memoranda in support of their respective positions, and have waived oral argument and hearing before this court. The court has carefully reviewed and considered the entire record of the DCF administrative hearing, as well as the thoughtful and well-prepared legal briefs submitted by counsel.
 AGGRIEVEMENT AND JURISDICTION
C.G.S. 17a-15(c) permits a child or parent to challenge the provisions of a DCF treatment plan at an administrative hearing.
An appeal may be filed with the Superior Court for Juvenile Matters in the venue where the subject child is located. C.G.S.4-183; C.G.S. 17a-15; C.G.S 46b-142. In this case, Jose C.'s children reside together in a foster home in Hartford. (Exhibits 3, 4 and 5).
Pleading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal. Light Rigging Co. v. Department of PublicUtility Control, 219 Conn. 168, 172, 592 A.2d 386 (1981). The Plaintiff in this action is the biological father of the three children and the hearing officer's final decision prevents him from visiting these children. Hence, the decision adversely effects a specific, personal legal right, sufficient to satisfy the aggrievement requirements of C.G.S. 4-183 and C.G.S.17a-15(c).
The final decision was rendered on April 13, 1998, and this appeal was filed with the court on May 18, 1998. The Plaintiff has complied with the requirement of C.G.S. 4-183 that the appeal CT Page 884 be taken within 45 days of the mailing of the final decision.
Because the court finds that the statutory prerequisites with respect to venue, aggrievement and timeliness have been satisfied, it further finds that the court has jurisdiction over this matter.
 SCOPE OF REVIEW
Judicial Review of an administrative agency's action is governed by the Uniform Administrative Procedure Act; General Statutes 4-166 et seq.; and . . . the scope of review is limited." Ottochian v. Freedom of Information Commission,221 Conn. 393, 397, 604 A.2d 351 (1992). The court may only decide "whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. Id. Unless the court finds evidence of such abuse, it ". . . shall affirm the decision of the agency . . ." C.G.S. 4-183(j). The trial court may not "retry the case or substitute its own judgment for the judgment of the agency." Board of Education v. Freedom ofInformation Commission, 208 Conn. 442, 452, 545 A.2d 1064 (1988), quoting CH Enterprises, Inc. v. Commissioner of Motor Vehicles,176 Conn. 11, 12, 404 A.2d 864 (1978).
 DISCUSSION
In his complaint, Jose C. alleged that the DCF hearing officer's findings "were inconsistent with the evidence and testimony presented during the Administrative Hearing," and that "the Hearings Officer acted arbitrarily and in abuse of his discretion." Although not plead in his complaint, nor supported by evidence presented at the administrative hearing, the Plaintiff contended in his memorandum that the final decision violated his constitutional rights to due process and equal protection, and was tantamount to an administrative termination of his parental rights.
The court first addresses the factual challenge to the final decision. The record of the administrative hearing revealed that the three children have been in DCF's care and custody since March 19, 1997, when the agency received orders granting it temporary custody of each child. (Transcript, P. 13). The children were removed from their mother's care on the basis of allegations that they had been neglected. At the time of removal, Jose C. was not living in the family home. (Transcript, P. 14). CT Page 885
Jose C. was incarcerated from July 1996 until February 1997. His whereabouts were unknown to DCF for approximately the first three months that the children were in DCF's care. (Transcript, P. 18). Jose C. did not make inquiry about the children during this period of time. (Transcript, P. 8). He subsequently requested visitation from DCF on May 19, 1997. (Transcript, P. 18). The department referred Jose C. to Catholic Family Services for parenting classes and supervised visitation. (Transcript, P. 17). The plaintiff began visitation through Catholic Family Services on June 5, 1997 and had five visits with the children. (Transcript P. 17). The visits between Jose C. and the children were described as "positive." (Transcript, P. 18). DCF Social Worker Zaira Reyes testified that during one visit on July 10, 1997 the Plaintiff displayed suicidal ideation and Catholic Family Services took him to Hartford Hospital. (Transcript, P. 19).
The Catholic Family Services report noted that Jose C. was ". . . an active participant in the parenting classes but did not seem to be able to integrate [new] knowledge." (Exhibit 6, P. 2). It also indicated that neither the father nor the mother possessed "a clear understanding of their role as parents." (Exhibit 6, P. 2). Catholic Family Services recommended against reunifying the children with the biological parents. (Exhibit 6, P. 3). The agency's report indicated that: "Permanency plan for the children should be established as family reunification in the near future is not recommended." (Exhibit 6, Page 3).
DCF Social Work Supervisor Kelly McVey provided additional information about the Catholic Family Services recommendation during her testimony at the administrative hearing:
 "But they [Catholic Family Services] felt they needed to close the case because they could not recommend reunification, because there was ample work to be done in addition to noted concerns they had about anger management on the part of the father, mental health concerns that they had in terms of maybe him requiring some course of treatment prior to seriously investing in a reunification program." (Transcript, P. 33).
Jose C. failed to cooperate with a court-ordered psychological evaluation, (Exhibit 3, P. 4). His whereabouts were again unknown to DCF from July, 1997 until January 5, 1998. CT Page 886 (Transcript, P. 19). DCF subsequently learned that the father was incarcerated on burglary charges in August, 1997, and that his anticipated date of release is in August 1999. (Transcript, Page 46).
Both Social Worker Reyes and Supervisor McVey testified at hearing that they believed further visits with Jose C. would not be in the best interests of the children. Ms. McVey testified that she based her opinion on the father's periodic absences from the children's lives, the length of his current period of incarceration, and the confusion visits would cause for the children, in light of DCF's plan to seek termination of Jose C.'s parental rights. (Transcript, P. 36-37). The supervisor testified that:
 "And I think based on the age of these children, their stage of development and their need for permanency, I think it can only serve to confuse them." (Transcript, P. 37).
The court finds, based on its review of all the entire record, that the hearing officer's final decision was consistent with the evidence presented at hearing. The court also finds that the decision was based upon substantial evidence which supported the conclusion that the DCF treatment plan denying visitation was in each child's best interests. This evidence included, inter alia, the father's periodic lack of involvement with the children, the length of time remaining on his present prison sentence, his failure to cooperate with a psychological evaluation, his unsuccessful participation in the Catholic Family Services parenting program, his inability to understand his role as a parent and the children's developmental needs, his apparent need for psychological treatment and the opinions and recommendations of the DCF social worker and DCF supervisor.
As noted above, the Jose C. also advanced due process and equal protection arguments for the first time in this case during closing argument at the administrative hearing. He subsequently reiterated those claims in the memorandum which he filed with this court.
In summary, Jose C.'s due process claim is based upon the contention that the administrative decision to deny visitation constituted a de facto termination of his parental rights without trial before the court. The Plaintiff's equal protection argument CT Page 887 is founded upon his claim that male prisoners in Connecticut are not accorded the same visitation opportunities which incarcerated mothers receive. For reasons set forth below, the court finds these claims to be without basis in fact or law.
C.G.S. 17a-15(a) mandates that the DCF commissioner, or her designee, "shall prepare and maintain a written plan for care and treatment of every child and youth" under her supervision. The statute further provides that:
 "Any child or youth or his parent or guardian aggrieved by any provision of a treatment plan prepared under subsection (a) of this section . . . shall be provided a hearing within thirty days following a written request for the same directed to the commissioner." C.G.S. 17a-15(c).
Viewed in its totality, Section 17a-15 establishes various due process safeguards for parents and/or children who disagree with any provision of a DCF treatment plan. These include not only the right to an administrative hearing before an agency hearing officer, but also the right to appeal the decision to the superior court for juvenile matters under the Connecticut Uniform Administrative Procedure Act (C.G.S. 17a-15(d). The rights afforded under the treatment plan review statute are separate and distinct from the statutory and constitutional rights of a respondent in a neglect or termination proceeding before the superior court for juvenile matters.
In the instant case, Jose C. requested and received an administrative hearing on the treatment plan before a DCF adjudicator. At that hearing, he was represented by counsel, cross examined and confronted witnesses, and testified on his own behalf. He subsequently appealed the administrative ruling to this court. The court finds that he received a full and fair opportunity to be heard on the issue of visitation, and that he has, in fact, been accorded due process with respect to the DCF treatment plan.
The court is also unpersuaded by Plaintiff's contention that DCF's decision to stop visits constituted a de facto termination of his parental rights. Jose C. will have the opportunity to contest a TPR at a trial before the superior court for juvenile matters. At that trial, DCF will be required by statute to prove by clear and convincing evidence statutory grounds for CT Page 888 termination, and that termination would be in the children's best interests. C.G.S. 17a-112. At that trial, Jose C. will be represented by counsel, and will also be accorded other significant due process rights. (See generally, Connecticut Practice Book Section 34-1, et seq.).
During the termination trial, the trial judge will be mandated by statute to make and consider certain findings, which include, inter alia, the timeliness, nature and extent of services offered to the parent by DCF, whether or not DCF made reasonable efforts to reunite the family, and the extent to which a parent has been prevented from maintaining a meaningful relationship with the child as a result of the unreasonable acts of any person. C.G.S. 17a-112(e).
Thus, Jose C. will be able to raise questions during a TPR trial concerning the efficacy of DCF's decision to curtail his visitation, and the court is required by C.G.S. 17a-112(e) to examine issues such as that as part of the termination trial. The court finds that the adjudicator's decision concerning the plan did not constitute a de facto termination of the Plaintiff's parental rights, or otherwise encroach upon his due process rights in a TPR trial.
Jose C. did not introduce any evidence at the administrative hearing in support of his equal protection claim that DCF treats female prisoners differently from male prisoners with respect to parent-child visits at Department of Correction facilities. An administrative tribunal, and this court, may only act based upon evidence properly placed before it on the record. Furthermore, the facts of one case recently decided by our Appellate Court[2] indicate that DCF does, in fact, provide periodic parent-child visits to male prisoners in Connecticut. See In reRoshawn R., 51 Conn. App. 44, 49, 58 (November 17, 1998).
It is axiomatic that all matters pertaining to child visitation be resolved based upon a determination of what is in the best interests of a child at any particular moment in time.Michaud v. Warwuck, 209 Conn. 407 (1988). In the case at bar, there was substantial evidence at the administrative hearing that DCF's actions were motivated by the best interests of the children. Conversely, there was no evidence that DCF's decision to curtail visits was prompted by gender-related considerations. Accordingly, the court finds Plaintiff's equal protection challenge to the administrative ruling to be without basis in CT Page 889 fact or law.
Based on all of the forgoing, the court finds that the decision of the DCF administrative hearing officer was not illegal, arbitrary, capricious, unconstitutional, or an abuse of his discretion. The court further finds that the hearing officer's final decision was based upon substantial evidence admitted into evidence during the administrative hearing. Accordingly, judgment may enter dismissing the Plaintiff's appeal.
SO ORDERED.
BY THE COURT:
Dyer, J.