ZONING BOARD OF APPEALS OF THE TOWN
OF PLAINFIELD ET AL. *v.* FREEDOM OF
INFORMATION COMMISSION ET AL.
(AC 20821)

Spear, Dranginis, and Hennessy, Js.

---

[3] There is no dispute that the jury in this case was all white.

Argued May 31—officially released October 16, 2001

*Victor R. Perpetua*, appellate attorney, with whom, on the brief, was *Mitchell W. Pearlman*, general counsel, for the appellant (named defendant).

*Opinion*

SPEAR, J. The defendant freedom of information commission (commission)[1] appeals from the judgment of the trial court sustaining the administrative appeal by the plaintiffs, the zoning board of appeals of the town of Plainfield (board) and certain of its members,[2] from the decision of the commission. General Statutes

---

[1] The other defendants are Roland Jernstrom and Frances Jernstrom, who filed the underlying complaint with the commission.

[2] The other plaintiffs are Carol St. Ament, Frank Zak, James Gallow, Thomas Rizer and Hollis Hooper, all of whom are members of the board.

(Rev. to 1997) § 1-21 (a), now § 1-225 (c),[3] requires that a public agency make its agenda available to the public at least twenty-four hours in advance of its meeting. Upon the affirmative vote of two-thirds of the board's members, however, new business may be "considered and acted upon" at a meeting without prior notice to the public. The sole issue on appeal is whether a two-thirds vote on the merits of a new agenda item comports with the requirements of § 1-21 (a), where there was no prior vote on whether to add the item to the agenda. The commission claims that the statute requires a two-thirds vote to add the item to the agenda before considering its merits. We agree with the commission and reverse the judgment of the trial court.[4]

The record discloses the following factual and procedural history. On November 5, 1997, the board voted three to one to grant a variance application filed by a board member, the plaintiff James Gallow, who had recused himself from the proceedings. That vote was legally inadequate, however, because General Statutes § 8-7 provides that the concurring vote of four board members is necessary to grant a variance.[5] Following

---

[3] General Statutes (Rev. to 1997) § 1-21 (a), now § 1-225 (c), provides in relevant part: "The agenda of the regular meetings of every public agency, except for the general assembly, shall be available to the public and shall be filed, not less than twenty-four hours before the meetings to which they refer, in such agency's regular office or place of business or, if there is no such office or place of business, in the office of the Secretary of the State for any such public agency of the state, in the office of the clerk of such subdivision for any public agency of a political subdivision of the state or in the office of the clerk of each municipal member of any multitown district or agency. Upon the affirmative vote of two-thirds of the members of a public agency present and voting, any subsequent business not included in such filed agendas may be considered and acted upon at such meetings. . . ."

[4] The board and the other plaintiffs failed to file appellate briefs. We considered the appeal on the record and on the brief of the commission.

[5] General Statutes § 8-7 provides in relevant part: "The concurring vote of four members of the zoning board of appeals shall be necessary to reverse any order, requirement or decision of the official charged with the enforcement of the zoning regulations or to decide in favor of the applicant

the meeting, the local newspaper published a legal notice reporting that the board had denied the application. That apparently surprised the members of the board who had voted in its favor. The agenda of the next board meeting for December 2, 1997, was noticed in accordance with the statutory requirements and included the following item: "3. Review and Act on Minutes of November 5, 1997." At that meeting, a board member proposed that the board "reconsider the variance because all of the members in attendance last month did not vote." According to the minutes of the meeting, the board members discussed whether they legally could proceed to discuss and vote again on Gallow's application at that session. The same board member then moved to grant the application for a variance, the motion was seconded, and the members voted, four to one, in favor of the application. The application did not appear on the scheduled agenda, and the vote was not preceded by a separate vote to consider the application.

Nine days later, the defendants Roland Jernstrom and Frances Jernstrom, who previously had attended the November 5, 1997, meeting to oppose the variance, filed a complaint with the commission, claiming that the plaintiffs had violated the Freedom of Information Act (act) when they "held a meeting without proper basis and considered a non-agenda item at a regular meeting . . . ." A hearing officer held a hearing on the complaint and found a violation of the act. Thereafter, the commission adopted the hearing officer's findings and legal conclusions, except as to penalty, and found the December 2, 1997 hearing to be null and void.

The board appealed from the commission's decision to the trial court, which found no violation of the act

---

any matter upon which it is required to pass under any bylaw, ordinance, rule or regulation or to vary the application of the zoning bylaw, ordinance, rule or regulation. . . ."

and sustained the appeal. In its memorandum of decision, the court concluded: "Whether an agency must first vote by a two-thirds majority to take up a matter, and then in a second vote to act upon it, or whether it can simply, in one vote, consider and act upon the measure directly by two-thirds vote seems to this court to dignify form over substance." The court rested its decision primarily on the ground that, because the local boards are composed of lay people and volunteers, they " 'may not always comply with the multitudinous statutory mandates under which they operate.' "

We begin our analysis by examining the law governing judicial review of an agency's decision interpreting a statute. "The question of whether a particular statute or regulation applies to a given state of facts is a question of statutory interpretation, which, upon review under the [Uniform Administrative Procedure Act, General Statutes § 4-166 et seq.], ordinarily presents a question of law. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of [our Supreme Court] to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . An exception is that when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference." (Citations omitted; internal quotation marks omitted.) *Dorlenzio* v. *Freedom of Information Commission*, 48 Conn. App. 424, 430–31, 710 A.2d 801 (1998).

Because the construction of § 1-21 (a) is a question of law, our review is plenary. The commission's interpretation is not entitled to deference because its inter-

pretation has not previously been subject to judicial scrutiny. See id. "In construing statutes, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Chief of Police* v. *Freedom of Information Commission*, 252 Conn. 377, 386–87, 746 A.2d 1264 (2000). "Furthermore, in construing this statute, we are mindful that exemptions to statutes are to be strictly construed. . . . Finally, common sense must be used in statutory interpretation, and courts will assume that the legislature intended to accomplish a reasonable and rational result." (Citations omitted; internal quotation marks omitted.) *Carpenter* v. *Freedom of Information Commission*, 59 Conn. App. 20, 24, 755 A.2d 364, cert. denied, 254 Conn. 933, 761 A.2d 752 (2000).

Statutory interpretation of the act also must be guided by certain general principles governing the act. "[I]t is well established that the general rule under the . . . [act] is disclosure, and any exception to that rule will be narrowly construed in light of the general policy of openness expressed in the [act's underlying] legislation. . . . The burden of proving the applicability of an exception to the [act] rests upon the party claiming it." (Citation omitted; internal quotation marks omitted.) Id.

Applying those well established principles to the interpretation of § 1-21 (a), we first look to the specific language of the statute. The statutes provides in relevant part: "Upon the affirmative vote of two-thirds of the members of a public agency present and voting, any subsequent business not included in such filed agendas

may be considered and acted upon at such meetings. . . ." The plain language of § 1-21 (a), read in its entirety, strongly suggests that the legislature intended a two-thirds vote to add an agenda item as a way to prevent agencies from avoiding the requirement of public disclosure under the act. The use of the phrase "be considered and acted upon" reinforces the plain meaning of the statute. First, the agency must vote to consider the item and then, only if two-thirds so vote, the agency may act upon the matter. Under the court's interpretation, the words "be considered and" are rendered a nullity, leaving the statute as stating, in effect, that upon a two-thirds vote, any new business "may be acted upon."

"It is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions. . . . Accordingly, care must be taken to effectuate all provisions of the statute. . . . Moreover, statutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . ." (Internal quotation marks omitted.) *State* v. *Gibbs*, 254 Conn. 578, 602, 758 A.2d 327 (2000).

The court's interpretation would eviscerate the statute. There would never be a need to vote affirmatively to add an item to the agenda where the item passed by a two-thirds vote on the merits. That would make the language of the statute superfluous in those instances. As the commission accurately points out in its brief: "Once the matter has been already considered and discussed, a vote on whether such consideration and discussion should have been added to the agenda becomes meaningless because the subsequent vote cannot change what has already occurred."

Moreover, this is not a matter of exalting form over substance. For example, a member of a public agency may be in favor of approving a new agenda item, but

also against adding the item without prior notice to the public. Under the court's construction of the statute, such a member would have to vote against the proposal on the merits. We conclude that the plain language of § 1-21 (a) requires that a new agenda item, not previously published, may be added to the agenda only after an affirmative vote of two-thirds of the members present and voting to add that item.

The judgment is reversed and the case is remanded with direction to render judgment dismissing the plaintiffs' appeal.

In this opinion the other judges concurred.