******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

*Syllabus*

Pursuant to statute (§ 1-200 (5)), " '[p]ublic records or files' means any recorded data or information relating to the conduct of the public's business prepared, owned, used, received or retained by a public agency . . . ."

Pursuant further to statute (§ 1-210 (b)), "[n]othing in the Freedom of Information Act shall be construed to require disclosure of . . . communications privileged by the attorney-client relationship . . . ."

The plaintiffs, the town of Avon and its town manager, B, appealed from the judgment of the trial court dismissing their administrative appeal from the final decision of the defendant Freedom of Information Commission ordering the plaintiffs to disclose certain information to the defendant S pursuant to the Freedom of Information Act (§ 1-200 et seq.). A managerial level town employee met with B to seek his guidance on how to handle certain work-related incidents and events involving the town's chief of police, R, that the employee had observed. Following that meeting, B contacted the town's attorney, who asked whether the employee had any documentation of those incidents. B subsequently contacted the employee, who confirmed that he had created a log detailing incidents occurring over the course of more than one year. The employee provided the log to B, who made a copy of the log, provided the copy to the town attorney, and returned the log to the employee. Pursuant to a memorandum from the town, R was placed on administrative leave, pending an investigation. Sometime thereafter, the town and R executed a severance agreement, and R retired from his position as chief of police. A few months later, S submitted a request that the town provide him with any and all records relating to the accusations concerning R. In response to this request, the plaintiffs provided S with a copy of the memorandum placing R on leave and the severance agreement; however, neither document included the reason behind the decision to place R on administrative leave, and the plaintiffs did not provide S with a copy of the log that had been given by the town employee to B documenting that employee's observations of R's conduct. S filed an appeal with the commission alleging that the plaintiffs had violated the act by failing to provide him with the log. During the hearing on S's complaint before a hearing officer for the commission, the plaintiffs' sole argument in opposition to S's request was that the log was exempt from disclosure due to the attorney-client privilege pursuant to § 1-210 (b). After the hearing officer issued her proposed final decision, finding that the log was not exempt from disclosure under the attorney-client privilege, the town responded to the proposed decision and, in addition to maintaining its argument that the log was protected from disclosure under the attorney-client privilege, also argued that the log was not a public record under the act because it consisted of the personal notes of an individual. In its final decision, the commission found that the log was a public record within the meaning of the act and concluded that the log was not a document protected by the attorney-client privilege, and, thus, it was not exempt from disclosure under the act. The commission therefore ordered that the log be disclosed to S. The plaintiffs filed an administrative appeal with the trial court, which, after a hearing, issued a memorandum of decision in which it agreed with the decision of the commission and dismissed the plaintiffs' administrative appeal. On appeal to this court, the plaintiffs argued, inter alia, that the commission erred by not considering or applying the four part test for determining whether a communication between a public employee and an attorney is privileged set forth in *Shew* v. *Freedom of Information Commission* (245 Conn. 149), which provides that communications to an attorney for a public agency are protected from disclosure by privilege if the attorney is acting in a professional capacity for the agency, the

communications are made to the attorney by current employees or officials of the agency, the communications relate to the legal advice sought by the agency from the attorney, and the communications are made in confidence. The commission, in turn, argued that the commission properly determined that the plaintiffs failed to demonstrate one of the three criteria set forth in *State* v. *Kosuda-Bigazzi* (335 Conn. 327) for establishing that a document is privileged, either by showing that the document is itself the record or memorialization of a communication between the client and the attorney, that the document was created with the intent to communicate the contents to an attorney and the client actually communicated the contents to the attorney, or that a preexisting document has been transformed into a communication for the purpose of seeking legal advice and that the document was communicated to or intended to be communicated to an attorney. *Held*:

1. The plaintiffs could not prevail on their claim that the trial court erred in concluding that the log was a public record pursuant to the act:

    a. Contrary to the plaintiffs' claim, this court concluded that the log included information relating to the conduct of the public's business under § 1-200 (5): there was no doubt that the public has an interest in the conduct of police, as public employees, and a log detailing concerns about the work-related conduct of the town's chief of police implicated the public's business and concern; moreover, § 1-200 must be construed in light of the overall purpose of the act, which favors disclosure of government records; furthermore, B conceded in his hearing testimony that the revelations in the log about the conduct of R were crucial to the decision to place him on leave, and the fact that the log triggered such an action, particularly against a high-level town official whose job involved public safety, supported the conclusion that the log included information relating to the conduct of the public's business, as the contents of the log provided a basis for understanding the town's investigative process, its decision making and its overall handling of R's employment, which eventually resulted in his resignation and a subsequent severance agreement between R and the town.

    b. The plaintiffs could not prevail on their claim that the log was not prepared, owned, used, received or retained by a public agency under § 1-200 (5), this court having concluded that the log was received by the town, which was dispositive of whether the log was a public record: it was undisputed that the employee, at the town attorney's request, gave the log to B, and, in light of the ordinary meaning of the word "receive," this court concluded that, when B took possession of the log, the town received the log for purposes of § 1-200 (5); moreover, the plaintiffs provided no authority for their argument that "received" under the statute means that the document must be given to a public agency for the agency's retention, and, in fact, such a reading of the statute would be redundant, as the statute includes whether a document was retained by a public agency as a separate ground for finding that it is a public record, and statutes shall be interpreted, whenever possible, to avoid redundancy; furthermore, the plaintiffs' argument that the log was not received by the town because B merely served as a conduit to deliver the log to the town attorney was unavailing, as the plaintiffs cited no authority in their appellate briefs for this assertion, the town attorney in this case was an agent of the town, and towns cannot be permitted to circumvent their statutory obligations relating to the disclosure of public records by simply delivering the records to their attorney.

2. Contrary to the plaintiffs' claim, the commission did not act unreasonably, arbitrarily, illegally or in abuse of its discretion in concluding that the log was not exempt from disclosure under the act pursuant to the attorney-client privilege: on the basis of a thorough review of the record, including an in camera review of the log, this court concluded that the record contained substantial evidence to support the commission's findings that the log contained personal observations of the employee relating to the conduct of R, the employee created the log for his own personal use, the log was not created for the purpose of seeking legal advice or with the intent to communicate its contents to an attorney, the employee met with B, who is not an attorney, to discuss the employee's concerns about R's conduct and to seek guidance on how to deal with R regarding the incidents that the employee had observed, and the log did not constitute a record of communication between a client and an attorney, as there was no evidence in the record showing that the employee who created the log ever spoke with the town attorney, and,

because those findings related to the second and third parts of the test in *Shew*, the trial court, in effect, applied the test in *Shew* when it analyzed the plaintiffs' claim of attorney-client privilege; moreover, those findings supported a conclusion that the plaintiffs failed to meet their burden of establishing that the log was exempt from disclosure under the attorney-client privilege, either under the test in *Shew* or the first two of the three ways to establish the attorney-client privilege with regard to documents as set forth in *Kosuda-Bigazzi*; furthermore, the commission's finding that the log was a preexisting document, in that it was in existence before B sought legal advice from the town attorney, was also supported by the substantial evidence in the record concerning the log, demonstrating that it was not a record of a communication and was not created for the purpose of seeking legal advice, and the commission specifically found that the employee did not later create a typed compilation and/or summary of the log for the purpose of securing counsel, and therefore there was no evidence in the record demonstrating a transformation of the log for the purpose of seeking legal counsel; additionally, although the plaintiffs argued that the log was provided to the town attorney solely for the purpose of seeking legal advice, this argument ignored the fact that the legal advice sought was for the town, not the person who created the log, and the log did not become a privileged document simply because B provided the log to the town attorney when he sought legal advice about how the town should proceed with respect to R.

Argued October 19, 2023—officially released March 5, 2024

*Procedural History*

Appeal from a decision by the defendant Freedom of Information Commission ordering the plaintiffs to disclose certain information to the named defendant, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Cordani, J.*; judgment dismissing the appeal, from which the plaintiffs appealed to this court. *Affirmed*.

*Michael C. Harrington*, with whom, on the brief, was *Proloy K. Das*, for the appellants (plaintiffs).

*Jennifer F. Miller*, commission counsel, with whom, on the brief, were *Danielle L. McGee*, commission counsel, and *Colleen M. Murphy*, general counsel, for the appellee (defendant Freedom of Information Commission).

*Elana Bildner*, with whom, on the brief, were *Sapana Anand* and *Dan Barrett*, for the appellee (named defendant).

*Opinion*

SEELEY, J. The plaintiffs, the town of Avon (town) and the town manager, Brandon Robertson, appeal from the judgment of the Superior Court dismissing their administrative appeal from the final decision of the defendant Freedom of Information Commission (commission) regarding a complaint filed by the defendant Joseph Sastre. In its final decision, the commission found that the plaintiffs had violated the Freedom of Information Act (act), General Statutes § 1-200 et seq., when they denied Sastre's request for a document (log) related to the resignation in 2019 of the town's police chief, Mark Rinaldo (Chief Rinaldo), and ordered that the town disclose the log pursuant to the act. On appeal, the plaintiffs claim that the court improperly dismissed their appeal from the commission's decision ordering disclosure of the log because (1) the log is not a public record under § 1-200 (5)[1] and, thus, is not subject to disclosure under the act, and (2) even if the log is a public record, it is exempt from disclosure under General Statutes § 1-210 (b) (10)[2] pursuant to the attorney-client privilege. We disagree with the plaintiffs and affirm the judgment of the Superior Court.

The following facts, as found by the commission and which are not disputed by the parties, and procedural history are relevant to our resolution of this appeal. In November, 2019, a managerial level "town employee met with the . . . town manager to discuss [work-related] incidents and events involving Chief Rinaldo. . . . [T]he employee was seeking the . . . town manager's guidance on how to deal with [Chief Rinaldo] regarding [certain] incidents [involving Chief Rinaldo] that the employee had observed." Following that meeting, the town manager contacted the attorney for the town (town attorney) and described the incidents mentioned by the employee. During that conversation, the town attorney asked whether the employee had any documentation of those incidents. The town manager then contacted the employee, at which time he "learned that the employee had created a log[3] detailing the underlying incidents. . . . [T]he log details incidents occurring over the course of one year, four months and five days (June 20, 2018, to October 25, 2019)." (Footnote added.) As a result of that conversation, "the employee provided the log to the . . . town manager, who made a copy of the log, provided the copy to the town [attorney], and returned the log to the employee." As documented in a memorandum dated November 11, 2019, Chief Rinaldo was placed on administrative leave, pending an investigation. Sometime thereafter, the town and Chief Rinaldo executed a severance agreement, and Chief Rinaldo retired from his position as chief of police.

On February 10, 2020, Sastre submitted a request that the town "provide him with any and all records relating

to the 'accusations' concerning . . . [Chief] Rinaldo." In response to this request, the plaintiffs provided Sastre with a copy of the November 11, 2019 memorandum and the severance agreement; however, neither document included the reason behind the decision to place Chief Rinaldo on administrative leave. The plaintiffs did not provide Sastre with a copy of the log that had been given by the town employee to the town manager documenting that employee's observations of Chief Rinaldo's conduct.

On March 13, 2020, Sastre filed an appeal with the commission, alleging that the plaintiffs violated the act by failing to provide him with the aforementioned log. On November 19, 2020, a hearing concerning Sastre's appeal was conducted before a hearing officer for the commission, at which Sastre and the plaintiffs "appeared, stipulated to certain facts, and presented testimony, exhibits and argument on the complaint." During the hearing, the plaintiffs' sole argument in opposition to Sastre's request was that the log was exempt from disclosure due to the attorney-client privilege. On September 22, 2021, the hearing officer issued her proposed final decision, finding that the log was not exempt from disclosure under the attorney-client privilege. On October 15, 2021, the town responded to the proposed decision. In its response, the town, in addition to maintaining its argument that the log is protected from disclosure under the attorney-client privilege, also argued that the log is not a public record because it consists of the personal notes of an individual.

On October 27, 2021, the commission held a meeting at which it reviewed the hearing officer's proposed decision. During the meeting, the town attorney reiterated the argument that the log was exempt from disclosure due to the attorney-client privilege and also argued that the log did not qualify as a public record as defined by the act. On November 17, 2021, the commission issued its final decision on the matter. The commission first found that the log is a public record within the meaning of General Statutes §§ 1-200 (5), 1-210 (a) and 1-212 (a). The commission next addressed the plaintiffs' claim that the log is exempt from disclosure under § 1-210 (b) (10), which exempts from disclosure records of "communications privileged by the attorney-client relationship . . . ." The commission concluded that the log is not a document protected by the attorney-client privilege and, thus, it is not exempt from disclosure under § 1-210 (b) (10). Therefore, the commission ordered that it be disclosed to Sastre.

After the commission issued its decision, the plaintiffs filed an administrative appeal in the Superior Court pursuant to General Statutes § 4-183. Sastre and the commission were both named as defendants in the appeal. A hearing was held on September 19, 2022. On September 20, 2022, the Superior Court issued a

memorandum of decision in which it agreed with the decision of the commission that the log is a public record subject to disclosure under the act and, therefore, dismissed the plaintiffs' administrative appeal. This appeal followed. Additional facts and procedural history will be set forth as necessary.

As a preliminary matter, we must first set forth the standard of review for this administrative appeal. "Our resolution of [this appeal] is guided by the limited scope of judicial review afforded by the Uniform Administrative Procedure Act [UAPA]; General Statutes § 4-166 et seq.; to the determinations made by an administrative agency." (Internal quotation marks omitted.) *Rocque* v. *Freedom of Information Commission*, 255 Conn. 651, 658, 774 A.2d 957 (2001). "Under the UAPA, it is [not] the function . . . of [an appellate] court to retry the case or to substitute its judgment for that of the administrative agency. . . . Even for conclusions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . [Thus] [c]onclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is . . . involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Commissioner of Emergency Services & Public Protection* v. *Freedom of Information Commission*, 330 Conn. 372, 379, 194 A.3d 759 (2018).

"The 'substantial evidence' rule governs judicial review of administrative fact-finding under the UAPA." *Dolgner* v. *Alander*, 237 Conn. 272, 281, 676 A.2d 865 (1996). "According to our well established standards, [r]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Citations omitted; internal quotation marks omitted.) *Stratford Police Dept.* v. *Board of Firearms Permit Examiners*, 343 Conn. 62, 81, 272 A.3d 639 (2022).

I

The plaintiffs first claim that the court improperly dismissed their administrative appeal from the commis-

sion's decision ordering disclosure of the log because the log is not a public record under § 1-200 (5).[4] In support of this claim, the plaintiffs argue that the log does not meet the statutory definition of a public record because it was not "prepared, owned, used, received or retained by a public agency . . . ." General Statutes § 1-200 (5).[5] We are not persuaded.

The following legal principles are relevant to our evaluation of this claim. Our Supreme Court has described the act as "our right-to-know law, providing for disclosure of public information . . . . [T]he [act] expresses a strong legislative policy in favor of the open conduct of government and free public access to government records. . . . At the time of its unanimous passage by the General Assembly, the act was noted for making sweeping changes in the existing right to know law so as to mark a new era in Connecticut with respect to opening up the doors of city and state government to the people of Connecticut. . . . The general rule under the act is disclosure." (Citation omitted; internal quotation marks omitted.) *Groton Police Dept.* v. *Freedom of Information Commission*, 104 Conn. App. 150, 154–55, 931 A.2d 989 (2007); see also *Chairman* v. *Freedom of Information Commission*, 217 Conn. 193, 196, 585 A.2d 96 (1991) (act " 'makes disclosure of public records the statutory norm' "); *Board of Trustees* v. *Freedom of Information Commission*, 181 Conn. 544, 550, 436 A.2d 266 (1980) (noting that representative who sponsored bill that was enacted "expressly stated on the floor of the house, the intent of the act 'is to make every public record and every public meeting open to the public at all times with certain specified exclusions' "). "The [commission] has full authority to determine the existence of public records and the propriety of their disclosure." *Board of Education* v. *Freedom of Information Commission*, 208 Conn. 442, 454, 545 A.2d 1064 (1988). In determining whether the log is a public record under the act, we must be "mindful that the purpose of the act is to balance the public's right to know what its agencies are doing, with the governmental and private needs for confidentiality. . . . [I]t is this balance of the governmental and private needs for confidentiality with the public right to know that must govern the interpretation and application of the [act]." (Internal quotation marks omitted.) *Commissioner of Emergency Services & Public Protection* v. *Freedom of Information Commission*, supra, 330 Conn. 398.

Whether the log is a public record under § 1-200 (5) of the act involves a matter of statutory interpretation[6] and "presents a question of law over which [an appellate court] exercise[s] plenary review." Id., 399. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the

text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Bridgeport* v. *Freedom of Information Commission*, 222 Conn. App. 17, 48, 304 A.3d 481 (2023), cert. denied, 348 Conn. 936, 306 A.3d 1072 (2024).

We start with the language of § 1-200 (5). Section 1-200 (5) defines a public record as "any recorded data or information relating to the conduct of the public's business prepared, owned, used, received *or* retained by a public agency . . . ." (Emphasis added.) Thus, pursuant to the statute, a document is a public record if it (1) relates "to the conduct of the public's business" and (2) was "prepared, owned, used, received *or* retained by a public agency . . . ." (Emphasis added.) General Statutes § 1-200 (5). Because the statute is in the disjunctive, only one of the aforementioned five grounds must be shown in order to demonstrate that the log is a public record. See, e.g., *In re Annessa J.*, 343 Conn. 642, 677, 284 A.3d 562 (2022) (" 'use of the disjunctive "or" between the two parts of the statute indicates a clear legislative intent of separability' ").

A

We first note that for the log to constitute a public record, it must relate to the conduct of the public's business.[7] Section 1-200 (5) does not define what constitutes the "conduct of the public's business" under the act. "[I]n the absence of a definition of terms in the statute itself, [w]e may presume . . . that the legislature intended [a word] to have its ordinary meaning in the English language, as gleaned from the context of its use. . . . Under such circumstances, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Braasch* v. *Freedom of Information Commission*, 218 Conn. App. 488, 510, 292 A.3d 711 (2023); see also General Statutes § 1-1 (a) ("[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language"). The word "public" is defined by Merriam-Webster's Collegiate Dictionary as "of, relating to, or affecting all the people or the whole area of a nation or state . . . of or relating to government . . . [or] of, relating to, or being in the service of the community or nation . . . ." Merriam-Webster's Collegiate Dictionary (11th Ed. 2014) p. 1005; see also The American Heritage Dictionary (5th Ed. 2011) p. 1424 (defining "public" as "[o]f, concerning, or affecting the community or the people"). "Business" is defined, in part, as "[o]ne's rightful or

proper concern or interest"; The American Heritage Dictionary, supra, p. 252; and "conduct" means "the act, manner, or process of carrying on . . . [or] a mode or standard of personal behavior . . . ." Merriam-Webster's Collegiate Dictionary, supra, p. 259. Construed together, the "conduct of the public's business" refers to an action or behavior that is of concern to the members of the community as a whole.

As we stated, the log details the concerns of a town employee regarding the work-related conduct of the chief of police. Our Supreme Court has made clear that "when a person accepts public employment, he or she becomes a servant of and accountable to the public. . . . The public has a right to know not only who their public employees are, but also when their public employees are and are not performing their duties." *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 177, 635 A.2d 783 (1993). The conduct of the police, in particular, has been deemed a matter of public concern by our Supreme Court. See *Hartford* v. *Freedom of Information Commission*, 201 Conn. 421, 435, 518 A.2d 49 (1986) ("the public has a legitimate interest in the integrity of local police departments and in disclosure of how such departments investigate and evaluate . . . complaints of police misconduct").

Documents do not have to be created by a public agency to relate to the conduct of the public's business. See *Commissioner of Emergency Services & Public Protection* v. *Freedom of Information Commission*, supra, 330 Conn. 398. For example, our Supreme Court recently addressed a claim that certain documents were not public records under the act "because they were created by a private individual and not the [Department of Emergency Services and Public Protection]." Id., 397. In rejecting that argument, the court explained: "[D]ocuments that are not created by an agency, but come into its possession because there was probable cause to believe that they constitute 'evidence of an offense, or . . . evidence that a particular person participated in the commission of an offense,' relate to the conduct of the public's business." Id., 398. Similarly, in the present case, although the log was created by the employee, it came into the town's possession when the employee provided it to the town manager, who, in turn, provided it to the town attorney, and its contents were instrumental in Chief Rinaldo being placed on administrative leave.

We also find guidance on this issue from case law concerning the invasion of privacy exemption to disclosure of public records, which "precludes disclosure . . . when the information sought by a request does not pertain to legitimate matters of public concern . . . ." *Perkins* v. *Freedom of Information Commission*, supra, 228 Conn. 175. In that context, our Supreme Court has stated that "[t]he legislature has . . . deter-

mined that disclosures relating to the employees of public agencies are presumptively legitimate matters of public concern . . . [although] [t]hat presumption is not . . . conclusive." Id., 174. Moreover, as we stated, "the public has a legitimate interest in the integrity of local police departments" and how they "investigate and evaluate . . . complaints of police misconduct." *Hartford* v. *Freedom of Information Commission*, supra, 201 Conn. 435. For instance, this court previously held that a document containing the instant messages of a police officer, which were the trigger for an investigation into whether the officer was responsible for misconduct, "pertained to a legitimate matter of public concern . . . [because] [the messages] contain[ed] the information which formed the basis for and triggered the . . . investigation in this case. Therefore . . . disclosure of the instant message conversations was necessary to facilitate the public's understanding and evaluation of the [department's] investigative process, decision-making and overall handling of an important matter involving a fellow police officer." (Internal quotation marks omitted.) *Tompkins* v. *Freedom of Information Commission*, 136 Conn. App. 496, 508–509, 46 A.3d 291 (2012).

In the present case, we conclude, following our own in camera review of the log and our review of the commission's findings, which are not disputed by the parties, that the log includes "information relating to the conduct of the public's business . . . ." General Statutes § 1-200 (5). First, there can be no doubt that the public has an interest in the conduct of police, as public employees, and a log detailing concerns about the work-related conduct of the town's chief of police certainly implicates the public's business and concern. In addition to the public's right to know whether its public servants are engaging in misconduct, we must construe the statute in light of the overall purpose of the act, which favors disclosure. See *Clerk of the Common Council* v. *Freedom of Information Commission*, 215 Conn. App. 404, 413, 283 A.3d 1 (2022) ("[t]he overarching legislative policy of [the act] is one that favors the open conduct of government and free public access to government records" (internal quotation marks omitted)); see also *Harrington* v. *Freedom of Information Commission*, 323 Conn. 1, 13, 144 A.3d 405 (2016) ("the general rule under the [act] is disclosure" (internal quotation marks omitted)).

Our determination is also supported by the hearing testimony of the town manager, who confirmed that he was given the log by the town employee and that it contains revelations about the conduct of Chief Rinaldo, the town's highest ranking police official. The employee had documented his concerns about Chief Rinaldo's conduct for more than one year and eventually sought the advice of the town manager, which prompted an investigation into the potential misconduct of Chief

Rinaldo. The town manager conceded in his hearing testimony that the revelations in the log about the conduct of Chief Rinaldo were crucial to the decision to place him on leave. The fact that the log triggered such an action, particularly against a high-level town official whose job involves public safety, supports our conclusion that the log includes information relating to the conduct of the public's business, as the contents of the log provide a basis for understanding the town's investigative process, its decision making and its overall handling of Chief Rinaldo's employment, which eventually resulted in his resignation and a subsequent severance agreement between Chief Rinaldo and the town.

B

Having determined that the contents of the log relate to the conduct of the public's business, we next address whether the log was "prepared, owned, used, received or retained by a public agency . . . ." General Statutes § 1-200 (5). Although the plaintiffs make arguments regarding all five grounds on appeal, we first address whether the log was received by the town, which, if found, will be dispositive of whether the log is a public record and obviate any need to address the other grounds. In support of their claim that the log was not received by the town, the plaintiffs assert that "received" under the statute means that the document must be "given to a public agency for the agency's retention" and that the log was not received by the town because the town manager merely served as a "conduit" to deliver the log to the town attorney. We do not agree with either of these arguments.

We first note that the act does not define the word "receive" for purposes of § 1-200 (5). As we stated previously in this opinion, "[i]n the absence of a definition of terms in the statute itself, [w]e may presume . . . that the legislature intended [a word] to have its ordinary meaning in the English language, as gleaned from the context of its use. . . . Under such circumstances, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Braasch* v. *Freedom of Information Commission*, supra, 218 Conn. App. 510; see also General Statutes § 1-1 (a) ("[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language"). The word "receive" is defined as "to come into possession of: acquire . . . ." Merriam-Webster's Collegiate Dictionary, supra, p. 1038. It is also defined as "to have delivered or brought to one . . . ." The Random House Dictionary of the English Language (2d Ed. 1987) p. 1610. Applying those definitions to the statutory language, we conclude that "any recorded data or information relating to the conduct of the public's business . . . received . . . by a public agency" in § 1-200 (5) necessarily includes a document that has

come into the possession of a public agency.

The commission made the following relevant findings in its decision, which support a determination that the log was received by the town for purposes of the act. After the town manager was made aware of the employee's log, the town manager told the employee that the town attorney wanted to review the log. As a result of that request, the employee gave the log directly to the town manager, who made a copy of it; the town manager then gave the copy to the town attorney and returned the original log to the employee. It is thus undisputed that the employee, at the town attorney's request, gave the log to the town manager. In light of the ordinary meaning of the word "receive," we conclude that when the town manager took possession of the log, the town "received" the log for purposes of the statute.

The plaintiffs have provided no authority for their argument that "received" under the statute means that the document must be "given to a public agency for the agency's retention." Such a reading of the statute would be redundant, as the statute includes whether a document was "retained" by the public agency as a separate ground for finding that it is a public record. It is a principle of statutory interpretation that statutes shall be interpreted, whenever possible, to avoid redundancy. See *Yeager* v. *Alvarez*, 134 Conn. App. 112, 121–22, 38 A.3d 1224 (2012) ("It is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . Because [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." (Citation omitted; internal quotation marks omitted.)).

The plaintiffs' argument that the log was not received by the town because the town manager merely served as a "conduit" to deliver the log to the town attorney is equally unavailing. Again, the plaintiffs cite no authority in their appellate briefs for this assertion. The town attorney in this case is an agent of the town. See, e.g., *First Selectman* v. *Freedom of Information Commission*, Superior Court, judicial district of New Britain, Docket No. CV-00-0501055-S (November 28, 2000) (29 Conn. L. Rptr. 27, 29) (holding that transcripts prepared by stenographer and delivered directly to town's attorney, and not town, were public records because "[t]he transcripts . . . were received and used by the [t]own's attorney as the [t]own's agent"); see generally *National Groups, LLC* v. *Nardi*, 145 Conn. App. 189, 201, 75 A.3d 68 (2013) (noting that "[a]n attorney is the client's agent"). Furthermore, towns cannot be permitted "to circumvent their statutory obligations relating to disclosure of 'public records' by simply delivering the records to their attorney." *First Selectman* v. *Freedom of Information Commission*, supra, 29. Accord-

ingly, the fact that the town manager provided the log to the town attorney does not change the fact that the town "received" the log for purposes of the act.

Therefore, because the log relates to the conduct of the public's business and was received by the town, the commission correctly determined that the log constitutes a public record under § 1-200 (5) of the act.

II

The plaintiffs next argue that, even if the log constitutes a public record for purposes of the act, it is exempt from disclosure pursuant to the attorney-client privilege under § 1-210 (b) (10) because it was given to the town attorney "for the sole purpose of providing legal advice." We do not agree.

The following legal principles guide our analysis of this claim. Section 1-210 (b) (10) exempts from disclosure "communications privileged by the attorney-client relationship . . . ." Our Supreme Court recently explained the parameters of the attorney-client privilege, stating: "Where legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser, except the protection be waived. . . . In Connecticut, the attorney-client privilege protects both the confidential giving of professional advice by an attorney acting in the capacity of a legal advisor to those who can act on it, as well as the giving of information to the lawyer to enable counsel to give sound and informed advice. . . . The privilege fosters full and frank communications between attorneys and their clients and thereby promote[s] the broader public interests in the observation of law and [the] administration of justice. . . . The privilege applies, however, only when necessary to achieve its purpose; it is not a blanket privilege. . . .

"The attorney-client privilege applies to oral and written communications. See, e.g., E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) § 5.16.1 (b), p. 262 ([c]ommunications between an attorney and a client can be written as well as oral); see also 1 Restatement (Third), The Law Governing Lawyers § 69, comment (b), p. 525 (2000) (A communication can be in any form. Most confidential client communications to a lawyer are written or spoken words . . . .). The present case involves documents, and our analysis will focus on that form of communication. The privilege must be established for each document separately considered and must be narrowly applied and strictly construed. . . . The burden of establishing the applicability of the privilege rests with the party invoking it . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Kosuda-Bigazzi*, 335 Conn. 327, 341–

43, 250 A.3d 617 (2020).

Exemptions under the act are also narrowly construed. "[T]he overarching legislative policy of [the act] is one that favors the open conduct of government and free public access to government records. . . . [I]t is well established that the general rule under the [act] is disclosure, and any exception to that rule will be narrowly construed in light of the general policy of openness expressed in the [act]. . . . [Thus] [t]he burden of proving the applicability of an exception [to disclosure under the act] rests upon the party claiming it. . . .

"When a claim of attorney-client privilege is invoked in an administrative proceeding, [appellate] review of a determination as to whether that privilege applies is governed by the [act] . . . . Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Citation omitted; internal quotation marks omitted.) *Harrington* v. *Freedom of Information Commission*, supra, 323 Conn. 13.

In *Shew* v. *Freedom of Information Commission*, 245 Conn. 149, 714 A.2d 664 (1998), our Supreme Court considered the issue of "whether the attorney-client privilege protects communications in circumstances where the client is a corporate or municipal entity, rather than an individual . . . ." Id., 158. In concluding that it does protect such communications, the court adopted the following test: "[C]ommunications to an attorney for a public agency are protected from disclosure by privilege if the following conditions are met: (1) the attorney must be acting in a professional capacity for the agency, (2) the communications must be made to the attorney by current employees or officials of the agency, (3) the communications must relate to the legal advice sought by the agency from the attorney, and (4) the communications must be made in confidence."[8] (Footnote omitted; internal quotation marks omitted.) Id., 159.

In the present case, the commission did not specifically cite to *Shew* in its decision[9] but, rather, relied on our Supreme Court's recent decision in *State* v. *Kosuda-Bigazzi*, supra, 335 Conn. 327, in which the court set forth three ways to establish the attorney-client privilege with regard to documents. Specifically, in *Kosuda-Bigazzi*, the court explained: "First, a party can establish that a document is privileged by showing that the

document is itself the record or memorialization of a communication between the client and the attorney. . . . [Second] [i]f the document is not a record of a communication, a party can still establish privilege by showing that (1) the document was created with the intent to communicate the contents to an attorney, and (2) the client actually communicated the contents to the attorney." (Citations omitted.) Id., 343. The third way for a party to establish that a document is protected by the attorney-client privilege is "by showing transformation of a preexisting document into a communication for the purpose of seeking legal advice and that the document was communicated to or intended to be communicated to an attorney. Preexisting documents are documents that are *not* a record of a communication and were *not* created for the purpose of seeking legal advice. . . . [Preexisting] documents that are not in themselves communications . . . are treated in different ways, depending on how the attorney acquired them. . . . A preexisting document does not become privileged merely because it is transferred to or routed through an attorney. . . . However, a preexisting document could become privileged if it were somehow transformed for the purpose of seeking legal advice and communicated or intended to be communicated to an attorney. See *Angst* v. *Mack Trucks, Inc.*, Docket Nos. 90-3274, 90-4329, 1991 WL 86931, *2 (E.D. Pa. May 14, 1991) (reasoning that plaintiff's handwritten notes made for personal use, not for purpose of securing attorney, would not fall within privilege, but typed compilation and summary created for purpose of securing counsel would fall within privilege)." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Kosuda-Bigazzi*, supra, 344–45.

On appeal, the plaintiffs argue that the commission erred by not considering or applying the test set forth in *Shew* for determining whether a communication between a public employee and an attorney is privileged. Relying on *Shew*, the plaintiffs argue that "the notes in this case were given to the [town attorney] for the sole purpose of providing legal advice . . . [and] [a]s such, the notes are exempt from disclosure pursuant to the attorney-client privilege." The commission counters that *Shew*, which "specifically addresses the issue of records that memorialize communications between counsel and public employees . . . does not address the issue [in the present case]" and that the commission properly determined that the plaintiffs failed to demonstrate one of the three criteria set forth in *Kosuda-Bigazzi* for establishing that a document is privileged. Sastre makes an argument similar to that of the commission and argues further that, even under the test set forth in *Shew*, the plaintiffs failed to meet their burden of demonstrating that the attorney-client privilege applies. We conclude that, under either test, the plaintiffs failed to meet their burden of establishing that

the log is exempt from disclosure pursuant to § 1-210 (b) (10) under the attorney-client privilege.

In its final decision, the commission made the following factual findings regarding the plaintiffs' attorney-client privilege claim. The commission "found that the . . . town manager is not an attorney and that the employee was not seeking legal advice from him. Rather . . . the employee was seeking the . . . town manager's guidance on how to deal with [Chief Rinaldo] regarding the incidents that the employee had observed. . . . [F]ollowing [their] November, 2019 meeting . . . the . . . town manager contacted [the town attorney] in order to obtain legal advice regarding the incidents the town employee had described to him. . . . [T]he . . . town manager relayed to [the town attorney] the incidents that had been described to him by the employee. . . . [A]t such time, the town [attorney] asked the . . . town manager to inquire of the employee as to whether the employee had any documentation or personal notes concerning the incidents involving [Chief Rinaldo]. . . .

"[T]he . . . town manager contacted the employee and first learned that the employee had created a log detailing the underlying incidents. . . . [T]he . . . town manager informed the employee that the town [attorney] wished to review the log. . . . [T]he employee provided the log to the . . . town manager, who made a copy of the log, provided the copy to the town [attorney], and returned the log to the employee."

On the basis of those uncontested facts, as found by the commission, and following its in camera review of the log, the commission found that the log "[does] not constitute a record of communication between the client and the attorney." The commission further found that the log was "not created with the intent to communicate the contents to an attorney." The commission also stated in its final decision: "It is found that the log is a preexisting document, in that it was in existence before the town [manager] sought legal advice from the town attorney. It is further found that the employee created the log for his own personal use and not for the purpose of seeking legal advice. It is also found that the employee did not later create a typed compilation and/or summary of the log for the purpose of securing counsel. Accordingly, it is found that the log is not a communication protected by the attorney-client privilege. Finally, it is concluded that the employee's log in the possession of the . . . town manager is not an attorney-client privileged document within the meaning of § 1-210 (b) (10) . . . ." The Superior Court agreed with the commission's determination and rendered judgment dismissing the appeal.

We conclude, on the basis of our thorough review of the record, including an in camera review of the log, that the record contains substantial evidence to support

the commission's findings that (1) the log contains personal observations of the employee relating to the conduct of Chief Rinaldo, (2) the employee created the log for his own personal use, (3) the log was not created for the purpose of seeking legal advice or with the intent to communicate its contents to an attorney, (4) the employee met with the town manager, who is not an attorney, to discuss the employee's concerns about Chief Rinaldo's conduct and to seek "guidance on how to deal with [Chief Rinaldo] regarding the incidents that the employee had observed," and (5) the log does not constitute a record of communication between a client and an attorney, as there is no evidence in the record showing that the employee who created the log ever spoke with the town attorney. We first note that those findings relate to the second and third parts of the *Shew* test; therefore, the court, in effect, applied the test in *Shew* when it analyzed the plaintiffs' claim of attorney-client privilege. Moreover, those findings support a conclusion that the plaintiffs failed to meet their burden of establishing that the log is exempt from disclosure under the attorney-client privilege, either under the *Shew* test or the first two of the three ways to establish the attorney-client privilege with regard to documents as set forth by our Supreme Court in *Kosuda-Bigazzi*. See *Harrington* v. *Freedom of Information Commission*, supra, 323 Conn. 16 ("[I]t is not enough for the party invoking the privilege to show that a communication to legal counsel relayed information that might become relevant to the future rendering of legal advice. Instead, the communication must also either explicitly or implicitly seek specific legal advice about that factual information." (Internal quotation marks omitted.)).

Furthermore, the commission's finding "that the log is a preexisting document, in that it was in existence before the town [manager] sought legal advice from the town attorney," is also supported by the substantial evidence in the record concerning the log, demonstrating that it is not a record of a communication and was not created for the purpose of seeking legal advice. See *State* v. *Kosuda-Bigazzi*, supra, 335 Conn. 344. As our Supreme Court has stated, such documents can become privileged if the documents "were somehow transformed for the purpose of seeking legal advice and communicated or intended to be communicated to an attorney." Id., 345. In the present case, the commission specifically found "that the employee did not later create a typed compilation and/or summary of the log for the purpose of securing counsel." There is, therefore, no evidence in the record demonstrating a transformation of the log for the purpose of seeking legal counsel. The log did not become a privileged document simply because the town manager provided the log to the town attorney when *he* sought legal advice about how the *town* should proceed with respect to Chief Rinaldo. See *State* v. *Kosuda-Bigazzi*, supra, 345. The plaintiffs'

argument that the log was provided to the town attorney solely for the purpose of seeking legal advice ignores the fact that the legal advice sought was for the town, not the person who created the log.[10] Accordingly, we conclude that the commission did not act unreasonably, arbitrarily, illegally or in abuse of its discretion in concluding that the log was not exempt from disclosure under the act pursuant to the attorney-client privilege. See *Lewin* v. *Freedom of Information Commission*, 91 Conn. App. 521, 525, 881 A.2d 519, cert. denied, 276 Conn. 921, 888 A.2d 88 (2005).

In summary, we conclude that the log constitutes a public record subject to disclosure under the act and that the commission's determination that it is not exempt from disclosure under the act pursuant to the attorney-client privilege resulted from a correct application of the law to the facts found. Accordingly, the court properly rendered judgment dismissing the plaintiffs' administrative appeal.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 1-200 (5) provides: " 'Public records or files' means any recorded data or information relating to the conduct of the public's business prepared, owned, used, received or retained by a public agency, or to which a public agency is entitled to receive a copy by law or contract under section 1-218, whether such data or information be handwritten, typed, tape-recorded, videotaped, printed, photostated, photographed or recorded by any other method."

Although § 1-200 was amended by No. 21-2, § 147, of the 2021 Public Acts, the amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] Section 1-210 governs access to public records. Subsection (b) of General Statutes § 1-210 provides in relevant part: "Nothing in the Freedom of Information Act shall be construed to require disclosure of . . . (10) Records, tax returns, reports and statements exempted by federal law or the general statutes or communications privileged by the attorney-client relationship, marital relationship, clergy-penitent relationship, doctor-patient relationship, therapist-patient relationship or any other privilege established by the common law or the general statutes, including any such records, tax returns, reports or communications that were created or made prior to the establishment of the applicable privilege under the common law or the general statutes . . . ."

[3] "The employee's log is an eleven page document with the employee's personal observations of work-related activities of Chief Rinaldo from June 20, 2018, through October 25, 2019. The hearing officer found, and it appears [to be] undisputed, that the log was prepared by the employee for the employee's own personal purposes."

[4] On appeal to the Superior Court, the plaintiffs argued both that the log is not a public record and that, even if it were, it is exempt from disclosure under the attorney-client privilege. In its memorandum of decision, the court stated in a footnote: "The court notes that the plaintiffs did not timely challenge the status of the log as a public record in the agency proceeding below. When the log was requested by the hearing officer for in camera review, the plaintiffs' attorney voluntarily provided the log on behalf of the town. The only defense to disclosure effectively asserted [before the commission] was the attorney-client privilege." Nonetheless, the court addressed the issue of whether the log is a public record and agreed with the commission's determination that the log is a public record under § 1-200 (5). In their principal appellate brief, the plaintiffs contend that they properly raised the claim before the commission issued its decision, and neither the commission nor Sastre argues on appeal that the issue of whether the log is a public record was not preserved and should not be reviewed. Given that the plaintiffs did raise a claim before the commission that the log is not a public record, that both the commission and the Superior Court

substantively addressed the issue and found the log to be a public record, and that no objection has been raised on appeal to our consideration of the issue, we will review this claim.

[5] In support of their claim that the commission erred in determining that the log is a public record, the plaintiffs also argue that "the document is not a public record, but rather private notes of an individual." Throughout their appellate briefs, the plaintiffs repeatedly refer to the personal nature of the employee's notes and observations contained in the log, arguing that notes of a personal nature are not subject to review by the public and, thus, cannot constitute a public record. The plaintiffs also cite federal case law for the proposition that " '[d]isclosure of . . . personal documents would invade the privacy of and impede the working habits of' " an employee. Both the commission and Sastre counter that the plaintiffs cannot now claim, for the first time on appeal, that the disclosure of the log would constitute an invasion of the public employee's privacy. Specifically, the commission and Sastre argue that any claim that the disclosure of the log would constitute an invasion of privacy under § 1-210 (b) (2) should have been made before the hearing officer and the commission and that the plaintiffs' failure to do so precludes them from objecting to the disclosure of the log for privacy reasons in this appeal. As Sastre and the commission both point out, the plaintiffs have repeatedly tried to shoehorn arguments regarding the "personal" or "private" nature of the log into their other claims, despite never having properly raised the invasion of privacy exemption under § 1-210 (b) (2). They further assert that arguments relating to the personal and private nature of the log are irrelevant to whether the log is a public record. We agree with the commission and Sastre.

Although the plaintiffs argue that the personal or private nature of the log prevents it from being a public record, any such argument is unavailing, as the definition of a public record under § 1-200 (5) centers not on whether the document contains information personal to the person who created it, but rather on whether that information "relat[es] to the conduct of the public's business . . . ." General Statutes § 1-200 (5). Additionally, because the plaintiffs did not raise an invasion of privacy claim under § 1-210 (b) (2) before the commission, they are precluded from doing so now. See *Dortenzio* v. *Freedom of Information Commission*, 42 Conn. App. 402, 409, 679 A.2d 978 (1996) (review of commission's decision is limited to issues raised before commission and findings in administrative record). Accordingly, the plaintiffs' arguments concerning the personal and private nature of the log are simply an attempt to argue a claim that was never properly raised, and, therefore, we do not take them into consideration in our determination of whether the log constitutes a public record under the act.

[6] We note "the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement." (Internal quotation marks omitted.) *Bridgeport* v. *Freedom of Information Commission*, 222 Conn. App. 17, 44, 304 A.3d 481 (2023), cert. denied, 348 Conn. 936, 306 A.3d 1072 (2024). Our Supreme Court recently explained that it "will defer to an agency's construction of a statute or administrative regulation if the language at issue is ambiguous and the agency's construction is time-tested, reasonable, and previously has been subject to judicial scrutiny. . . . When the statute or regulation at issue is not ambiguous, or the agency's construction of the statute or regulation is not time-tested, reasonable, or has not previously been subjected to judicial scrutiny, 'we apply a broader standard of review . . . .' " (Citation omitted.) *Commissioner of Mental Health & Addiction Services* v. *Freedom of Information Commission*, 347 Conn. 675, 688, 299 A.3d 197 (2023). In the present case, the language of § 1-200 (5) is not ambiguous, and the commission does not claim that its construction of the statute is entitled to deference or that it is time-tested. Moreover, the commission's final decision includes the commission's legal determination that the log is a public record within the meaning of § 1-200 (5), without any analysis or interpretation of the definition of a public record as set forth therein. Accordingly, we conclude that the issue of statutory interpretation in the present case is a question of law subject to plenary review. See, e.g., *Commissioner of Emergency Services & Public Protection* v. *Freedom of Information Commission*, supra, 330 Conn. 382 (applying plenary review to question of statutory construction); *Williams* v. *Freedom of Information Commission*, 108 Conn. App. 471, 478, 948 A.2d 1058 (2008) (same); *Zoning Board of Appeals* v. *Freedom of Information Commission*, 66 Conn. App. 279, 283–86, 784 A.2d 383 (2001) (same).

[7] In its appellate brief, the commission asserts that the "plaintiffs either do not dispute that the log, which consists of concerns regarding work-

related conduct of [Chief Rinaldo], pertains to the public's business or, alternatively, have failed to adequately brief that issue." In their appellate briefs, the plaintiffs make a passing reference that the log does not relate to the public's business. Additionally, the plaintiffs refer to the conduct of the public's business requirement in a footnote in their principal appellate brief and then cite to two commission decisions in which the document at issue was not considered to be a public record because it did not relate to the conduct of the public's business. The facts of those decisions, however, are inapposite to the present case. Moreover, the plaintiffs' principal appellate brief is devoid of any argument or application of that law to the facts of the present case or any analysis concerning whether the log is related to the conduct of the public's business. To the extent that the plaintiffs, by referring to the personal nature of the information in the log, are asserting that it does not relate to the public's business, we are not persuaded. First, as we stated, the plaintiff's appellate brief is devoid of the necessary analysis and citation to applicable law regarding what constitutes the "public's business" to properly assert such a claim for appellate review. Additionally, the plaintiffs, by referencing the personal nature of the log, appear to be implicating, without specifically referencing, the right to privacy exemption under the act, which is not applicable to this case. See footnote 5 of this opinion.

"We repeatedly have stated that [w]e are *not required* to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs." (Emphasis added; internal quotation marks omitted.) *Buchenholz* v. *Buchenholz*, 221 Conn. App. 132, 142 n.6, 300 A.3d 1233, cert. denied, 348 Conn. 928, 304 A.3d 860 (2023). "Claims are . . . inadequately briefed when they . . . consist of conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record . . . ." (Internal quotation marks omitted.) *Rosario* v. *Rosario*, 198 Conn. App. 83, 90, 232 A.3d 1105 (2020). We agree with the commission that the claim was inadequately briefed; however, while we are not *required* to review an issue that has not been adequately briefed, in the interest of thoroughness in explaining why the log is a public record under the act and in our plenary review, we will address the relation between the log and the public's business. See, e.g., *State* v. *Buhl*, 321 Conn. 688, 724 n.29, 138 A.3d 868 (2016) (whether to review inadequately briefed claim constitutes exercise of judicial discretion).

[8] The legislature subsequently codified the common-law attorney-client privilege in General Statutes § 52-146r, which, in subsection (b), provides that "[i]n any civil or criminal case or proceeding or in any legislative or administrative proceeding, all confidential communications shall be privileged and a government attorney shall not disclose any such communications unless an authorized representative of the public agency consents to waive the privilege and allow such disclosure." See also *Maxwell* v. *Freedom of Information Commission*, 260 Conn. 143, 149, 794 A.2d 535 (2002). The statute defines "confidential communications" to include "all oral and written communications transmitted in confidence between a public official or employee of a public agency acting in the performance of his or her duties or within the scope of his or her employment and a government attorney relating to legal advice sought by the public agency or a public official or employee of such public agency from that attorney, and all records prepared by the government attorney in furtherance of the rendition of such legal advice . . . ." General Statutes § 52-146r (a) (2). "[T]he essential elements of the attorney-client privilege under both statutory and common law are identical." (Internal quotation marks omitted.) *Chairperson, Connecticut Medical Examining Board* v. *Freedom of Information Commission*, 310 Conn. 276, 301 n.9, 77 A.3d 121 (2013) (*Norcott, J.*, concurring). For purposes of both §§ 1-210 (b) (10) and 52-146r, the four part test set forth in *Shew* is applied to determine whether communications are privileged. See id.; *Lash* v. *Freedom of Information Commission*, 300 Conn. 511, 515–16, 14 A.3d 998 (2011).

[9] We note, however, that the commission cited to both the common-law definition of the attorney-client privilege, as set forth in *Maxwell* v. *Freedom of Information Commission*, 260 Conn. 143, 149, 794 A.2d 535 (2002), and the statutory definition in General Statutes § 52-146r. As we stated previously in this opinion, the essential elements under both the common-law and

statutory privilege are identical and are embodied in the four part test set forth in *Shew*. See footnote 8 of this opinion.

[10] In their principal appellate brief, the plaintiffs assert that "there was a confidential communication between a managerial employee and the [town attorney] regarding a matter pertaining to work at the town. Rather than interview the individual . . . the [town attorney] asked the individual to provide any notes . . . of [the individual's] concerns. As such, the communication between the [town attorney] and the individual took the form of a written communication that occurred for the sole purpose of receiving legal advice. Therefore, as in *Shew*, the communication between [the town attorney] and the employee was privileged and is not subject to public disclosure pursuant to § 1-210 (b) (10)." We do not agree with the plaintiffs' assertion or their characterization of the "communication" at issue. The log was created by the employee before any communication was made by the town manager to the town attorney. Therefore, even though it was subsequently provided to the town attorney, that does not change the fact that it was not created by the employee for the purpose of seeking legal advice, nor does it transform the log, a preexisting document, into a communication between the employee and the town attorney. This is not a situation in which the employee, at the town attorney's request, created the document to summarize information for which he sought legal advice. Moreover, the plaintiffs misapply *Shew* when they describe the communication between the town manager and the town attorney as "confidential," rather than the log, which is the alleged privileged communication or document. See *Shew* v. *Freedom of Information Commission*, supra, 245 Conn. 159. Any confidential discussion that occurred between the town manager and the town attorney is not at issue in this case, in which the plaintiffs are asserting that the log constitutes a privileged communication.